(39 Misc. Rep. 401.)

CRUIKSHANK v. CRUIKSHANK et al.

(Supreme Court, Special Term, Kings County. December, 1902.)

1. WILL—CONSTRUCTION—NATURE OF ESTATE.

Testator died, leaving a daughter, who thereafter died, leaving a son, who sued for the construction of a holographic will of his grandfather. The will provided for a life trust in behalf of the daughter, and that after her death the income should be used for the support of her surviving children during minority, the principal to be paid at majority to such issue, but that if no issue survived, or if the issue died before "maturity," the principal should go equally to testator's "remaining children." A codicil provided for the amendment of such bequest by giving to such issue the income of the fund, instead of the principal, and, "with this end in view, I therefore give to my executors full power and authority to act as trustees of said issue, and in like manner as in the case of the daughter." Held, that the grandson took only a life interest in the body of the estate, and testator's remaining children took the remainder.

2. SAME—VESTED INTEREST.

Where a will gives certain property to trustees, the income to be paid to testator's grandson for life, with remainder to testator's children, such remainder vests in the children on the testator's death, and is not affected by a power given the trustees to sell any of the property upon the consent of certain of the beneficiaries, with directions to reinvest.

Action by James H. Cruikshank against Edwin A. Cruikshank and others to construe a will. Judgment for defendants.

Russell E. Burke and William Harison, for plaintiff.

Edward De Witt, for the defendant trustees.

J. Bradley Tanner, for defendants Warren Cruikshank, Edwin A. Cruikshank, and Carrie C. Timpson.

William H. Harris, guardian ad litem for infant defendant.

MADDOX, J. The will and codicils under consideration, holographic in character, were prepared with evident care; and the will alone, by itself, comprehensively presents a complete scheme, is readily and without difficulty construed and interpreted, and testator's plan and purpose made plain. It is with the second codicil that question is raised, and that of a serious nature, since it involves the possible disinheriting of a grandchild, save as to the income during his life of a trust fund of about $50,000. Testator's intention must be gathered, if possible, after a careful scrutiny and consideration of all the language employed in the will and the three codicils, as one instrument, and his purpose, when ascertained, effectuated, and not frustrated because of any inapt or incomplete expression or by reason of an inadvertent omission in a provision or item thereof; and the language of a holographic will should be given its ordinary and popular significance and meaning, rather than a technical interpretation, especially if the testator be a layman.

The controversy here is as to the final disposition of the corpus of the trust created for the benefit of the daughter Hattie and her issue, by the fourth item of testator's will, as the provisions thereof are affected and changed by the second and third sentences of his second codicil. By said fourth item the testator gave and devised certain property to his—

"Executors, in trust, for the benefit of my daughter Hattie during life; * * * and all moneys derived thereby from rents, dividends, interest, and from all other sources, are to be paid over in quarterly payments to my said daughter Hattie, after all taxes, insurance, repairs, and other proper charges. including a commission of five per cent. on sums collected as income for their services, have been deducted and paid. On the death of my said daughter Hattie, leaving issue, her surviving, the income derived from this trust, or so much of it as my executors may deem proper, is to be used for the support, education, and maintenance of such issue during minority, and when that is reached the entire principal is to be paid over to such issue; and in case there be no issue, her surviving, or the issue die before maturity, then, in either event, the said principal is to go to my remaining children, share and share alike."

A trust provision similar in every respect to the foregoing was made in favor of testator's other daughter, Carrie, and her issue, which was not changed by any of the codicils; and the bequests and devises to the three sons are alike in tenor, and absolute in terms.

By the second codicil testator, among other things, provided as follows:

"Under section four of said will I have given to the issue of my daughter Hattie at her death the entire principal, real and personal, of the fund held by my executors in trust for her use and benefit during her life. This bequest I hereby amend by giving to said issue the income of said fund, instead of the principal; and, with this end in view, I hereby give to my executors full power and authority to act as trustees of said issue, and in like manner and respect as in the case of Hattie during her lifetime."

It is plaintiff's contention that the gift of the principal of that trust to Hattie's issue was not revoked by the second codicil, and that he, as the sole issue, has a vested remainder therein, subject to an equitable life estate; that the control and enjoyment only of the principal are postponed, and instead thereof that he takes the income

for life; that being beneficially interested in the whole of the income thereof, and being entitled to the remainder of the whole of the principal of said trust, subject only to such beneficial estate for his life, and having released to himself, as such remainderman, his beneficial interest in the income, by operation of law a merger of the trust in the remainder has resulted; and that he is therefore entitled to the immediate possession and control of the same. 1 Rev. St. p. 730, § 63, as amended by Laws 1893, c. 452; Real Property Law (Laws 1896, c. 547, § 83); Personal Property Law (Laws 1897, c. 417, § 3). On the other hand, the defendants claim a revocation of the bequest of the remainder, and contend that it went to and vested in the testator's "remaining children, share and share alike."

At the outset, it is well to be mindful that the law favors equality as between the children and grandchildren of a testator, and that courts will avoid disinheritance of one entitled to a testator's bounty, unless the intention to discriminate or to exclude is clearly shown; likewise, that a partial intestacy is not to be favored, if by fair interpretation of the language used it can be avoided; again, that a gift or devise couched in clear and unmistakable language will not be cut down or be deemed revoked by a subsequent provision or clause not equally as clear and as decisive in terms; and, further, that equality as between his children and their issue, save as limited by the provisions of the second codicil as to the gift to her issue of the principal of the trust created for the benefit of his daughter Hattie, is well evidenced by testator's language, as is also his intention to fully dispose of all his estate, for he has seemingly negatived the possibility of a partial intestacy in any event. The daughter Hattie had been divorced in 1880, and, having resumed her maiden name, with her only child, this plaintiff, then about three years old, went to live in testator's home; he having retired from business. The family then consisted of the testator, his two daughters, Miss Riddell, a friend, and this plaintiff, and it so continued until testator's death, in 1895; the relations, so far as appears, continuing amicable and of an affectionate character. The daughter Hattie did not remarry, and was about 38 years of age when the will was executed; having, with her child, then lived as a part of testator's household about 12 years. She died in October, 1896; and it is to be presumed that the testator knew of his daughter Hattie's domestic infelicities, and her situation in life, with one child, her only issue.

Now, the construction and effect of the provisions of the fourth item of the will, uninfluenced by any subsequent clause, should be first considered. It must be conceded that a valid trust was thereby created, with a life estate in the daughter, and a remainder over to her issue. The net income was to be paid to her quarterly, and on her death, leaving issue, the income was to be applied, as the executors deemed proper, "for the support, education, and maintenance of such issue during minority, and when that is reached the entire principal is to be paid over to such issue." When what is reached? may well be asked, and the answer is, I think, to be found in the language immediately following, where testator provided that, "in case there be no issue, her surviving, or the issue die before maturity,

then, in either event, the said principal is to go to my remaining children, share and share alike." Thus we have the word "minority" used in limitation of the term during which the income shall be applied to the "support, education, and maintenance of such issue," and then, when majority is reached,—when minority is passed,—such application of the net income shall cease. If the issue shall die before "maturity,"—an inapt expression, indeed, but this is the holographic will of a layman,—the principal is to go to testator's remaining children; otherwise to "such issue." The payment over of the principal is deferred until the time limited for the "support, education, and maintenance of" the issue shall have lapsed, and hence the word "maturity," as used here, must be held to mean maturity in law, or when such issue shall have reached majority. Again, testator contemplated the other possible contingency, namely, the default of issue on the part of his daughter, and in that event gave the principal (the remainder) to his "remaining children," so that, if for any reason such issue did not take, then it would go to his remaining children upon the termination of the trust. The testator thereby intended: First, to provide for the support of the daughter Hattie for her life; and, secondly, the "support, education, and maintenance" during minority of her issue,—thus providing for an intermediate life estate, and a minority before distribution. The trust term was measured by the life of the daughter, and the principal thereof made payable upon her death to her issue, if majority had been reached; but if the issue died during minority, and likewise in case of default of issue, then to his remaining children.

And now we reach the more serious question,—the meaning of the codicil provision, and its effect upon the gift over of the principal by the fourth item of the will. Close scrutiny and careful consideration must, as before stated, be given to the language of the will and of the several codicils, as one complete instrument, and the testator's intention and purpose ascertained therefrom. Ward v. Ward, 105 N. Y. 68, 11 N. E. 373. As shown by the second codicil, after referring to the gift "to the issue of my daughter Hattie at her death" of the entire principal of the trust for her benefit, testator said, "This bequest I hereby amend by giving to said issue the income of said fund, instead of the principal; and, with this end in view, I hereby give to my executors full power and authority to act as the trustees of said issue and in like manner and respect as in the case of Hattie during her lifetime;" and hence did he mean, by the use of the words "amend" and "instead of," to revoke the previous gift of the principal to such issue? By the tenth item of his will he gave to his "children an equal undivided interest in" his residence, and by the third paragraph of the first codicil he directed that such gift "is hereby amended by" giving to the two daughters "the income to be derived thereby instead," and also that the "executors place said proceeds of the sale to the fund, as an integral part thereof, held by them in trust for the use of my said daughters, respectively, during life." How nearly alike the two codicil provisions last quoted are! In both he used the words "income" and "instead," and in one the word "amend," while in the other "amended." Can it be urged that in the last codicil paragraph re-

ferred to he did not revoke the gift to the two daughters of "an equal, undivided interest in" his residence? I think not. But, to continue, it may be fruitful, in thus seeking his intention, particularly to call attention to other language in the codicils, viz.: In the first, after referring to the bequest of $5,000 to Miss Riddell, he said: "This bequest is hereby annulled, and in its stead I give and bequeath the said sum" in trust, during her life; again, "I hereby annul the bequest" to the children of his brother Edward, "and instead thereof I give to each" $200. In the second codicil, referring to the gift to Georgianna Dyckman, he said, "This bequest is hereby revoked, and in its stead I give to her * * * one hundred dollars;" and in the third, in each of the first three paragraphs, his language is, "I hereby revoke and declare void" several bequests; and, continuing, he said in each, "and instead thereof I give and bequeath" other sums to the same beneficiaries. Thus we have the words "annulled," "annul," and "amended" used in the first codicil, the words "amend" and "revoked" in the second, and the expression "revoke and declare void" in the third, while in all of the provisions in which they are found we likewise find the use of the words "instead" or "in its stead"; and hence the use of the words "instead" and "in its stead," in each of the instances above quoted, as well as in the paragraph under consideration, must be deemed indicative of some intention on the part of the testator in thus substituting in each one gift for another, since the ordinary and popular definition of the word "instead" and the phrase "in its stead" is in the room of, in lieu of, in the place of. They are expressions of substitution of one thing for another,—of equivalence; and we find that in Plank Road Co. v. Russell, 7 N. Y. St. Rep. 597 (an action involving statutory construction), the court (Judge Follett writing) held that "the term 'instead of' means in the place or room of, and the plain intent * * * was to supersede"; that the language used resulted in a statutory repeal by implication. Therefore, in using the words and term referred to, the testator indicated most clearly an intention to change each of the provisions annulled, amended, or revoked, and to supersede the substance of the gift in each case by the substitution of something different; and consequently the bequest of the principal of such trust to the issue of Hattie was, by implication, revoked, for, if such issue were to have both, there would be an inconsistency, since then there would be no substitution of the one for the other and the use of the term "instead of" would in that case be meaningless. In reaching this conclusion, I am not unmindful of the language of the bequest to plaintiff of the $300 by the fifth item of the third codicil, and the solicitude therein expressed by the testator for plaintiff's future. By the eleventh paragraph of the will, "full power and authority" were given to the executors "to sell and dispose of * * * the whole or any portion of the real or personal estate held by them in trust for" the daughters, upon their consenting, with directions to reinvest the proceeds in bonds and mortgages.

And now, the will and codicil speaking as one instrument, and as of the time of testator's death, we have a full and complete scheme and purpose on the part of the testator as to all of his property; and

it is to be noted that those who were to take on the termination of the trust in question were then in being and were known. They were his remaining children, and thus no partial intestacy could result. The bequest was complete, but the control, possession, and enjoyment of the corpus of the trust was postponed until the termination of the trust, out of which were carved two intermediate life estates,—that of the daughter Hattie, and the other of her issue, this plaintiff. Reading the fourth item of the will as so modified and changed by the codicil provision in question, there is nothing indicating an intention that the vesting should be postponed, and futurity was not annexed to and was not of the essence of the gift of the principal over. Therefore testator's "remaining children" took upon his death a vested remainder in fee in the corpus of such trust. Roosa v. Harrington, 171 N. Y. 349, 64 N. E. 1. The power of sale did not affect the vesting of the estate in the remaindermen. They took their interests subject to the life estates, and the exercise of that power of sale had already vested in his remaining children. "When the will went into effect by the testator's death, there was no contingency, either as to the person entitled in remainder, or as to the event by which the intermediate estate was to be determined." Van Axte v. Fisher, 117 N. Y. 403, 22 N. E. 944.

It is unnecessary to consider the effect of the release executed by plaintiff, and, for the reasons above stated, judgment is directed for defendants.

Judgment for defendants.