COMMERCIAL BANK & TRUST CO. *v.* NOBLE *et al.**

(Division A.    May 23, 1927.)

[112 So. 691.    No. 26489.]

WILLS.    *"Age of maturity"* in will held to mean maturity in mind, character, and judgment.

"Age of maturity" in will giving testator's small estate with negli-gible income in trust to hold till testator's youngest child shall have reached the age of maturity, for the use and benefit of his wife and three minor children, *held*, in the absence of anything in the will to indicate intent to use the words in other than their ordinary and usual sense, to mean maturity in mind, character, and judgment.

*Corpus Juris-Cyc References: Age, 2CJ, p. 402, n. 17 New; Maturity, 39CJ, p. 1391, n. 43 New; Wills, 40Cyc, p. 1407, n. 96 New.

APPEAL from chancery court of Jones county.

HON. G. C. TANN, Chancellor.

Suit between the Commercial Bank & Trust Company and Albert Sidney Noble and others.    From adverse decree, said company appeals.    Affirmed.

*Deavours & Hilbun,* for appellant.

This is a friendly suit for the purpose of the construc-tion of the last will and testament of Albert W. Noble, deceased.    Appellant is the executor in said will and the appellees are the devisees thereunder.

Appellees contend that the intent and meaning of the phrase "age of maturity" is synonymous with the age of discretion and capacity and ability to think and rea-son for one's self.    The appellant contends that the phrase "age of maturity" in this last will and testament means when the infant becomes an adult, over the age of twenty-one years.    There are no disputed facts.

The appellant contends that it was the manifest intent and purpose of said testator that his property should be held in trust by appellant as executor until testator's youngest child should become an adult, over the age of twenty-one years. 5 Words & Phrases 4418, *Cruikshank* v. *Cruikshank,* 80 N. Y. Supp. 8, 11, 39 Miss. 401; *Carpenter* v. *Boulden,* 49 Md. 122, 129.

It seems to us clearly to show that by "age of maturity" he intended to mean that the youngest child should reach lawful age. The court erred in its construction; therefore, said cause should be reversed.

*Morris & Wingo,* for appellees.

It is the contention of the appellees that the testator, having in mind the difference in the ages of his three children, used the phrase "age of maturity" in its ordinary sense and meaning as is commonly understood. The youngest living child was at the time of the trial nearly seventeen years of age, well developed mentally and physically, capable of transacting business for himself, and possessed of reasonably mature judgment generally.

Webster's Unabridged Dictionary defines "maturity" as follows: "The state of being mature, ripeness; a state of perfection or completeness, as the maturity of age or judgment." Collier's New Dictionary, 1927 edition, defines the same word as follows: "The state or quality of being mature, ripeness, full development." Anderson's Dictionary of Law defines "maturity" as follows: "Maturity in a will may import maturity of mind and character, the combined result of age and education."

This exact question has been decided in *Convict's Executors* v. *King,* 13 N. J. (Eq.) (2 Beasl.) at 380.

It is well-settled law in this state as well as the general rule of law that the intent of the testator at the time of the execution of the will is controlling in its construction. It was the wise and thoughtful act of this father to provide that at the "maturity," meaning the state of

mental development, the combined result of age and education, of the youngest child that the two eldest children and wife should be entitled to their equal share of his property and that the executor, trustee, and appellant here, should continue to act as the guardian for his youngest child from such age of maturity until he reached his majority, or during minority.

COOK, J., delivered the opinion of the court.

This appeal involves the construction of the last will and testament of Albert W. Noble, deceased, and particularly the meaning of the phrase "age of maturity," as used in the provision of item 3 of the will, that "the said corporation shall hold all my property in trust until my youngest living child shall have reached the 'age of maturity,'" etc.

Omitting the formal parts thereof, the will reads as follows:

"1. I give, devise and bequeath unto Commercial Bank and Trust Company, a corporation, at Laurel, Mississippi, in trust for the uses and purposes hereinafter stated, all of my property, real, personal and mixed.

"2. I hereby appoint the said corporation as the executor of this my last will and testament, and also designate it as the guardian of my three minor children.

"3. The said corporation shall hold all my property in trust until my youngest living child shall have reached the age of maturity, and to the use and benefit of the following four named persons, share and share alike, to-wit: My wife, Marie Powell Noble, and my three minor children, Albert, Leila and William Noble. The income from such property shall be used in the support and education of said four beneficiaries; and said corporation, under the orders of the proper court, may dispose of any of such real or personal property, and re-invest the proceeds thereof, provided no sale of the real estate be made within two years from the date of this will, un-

less the income from my property becomes insufficient at any time for the support and education of such beneficiaries, in which event my real property may be sold and the principal realized therefrom, in so far as necessary, may be used for the purpose.' In the event of the death of one or more of said beneficiaries, his or their beneficial interest shall become the property of the survivors, share and share alike.

"4. My insurance policy in the Woodmen of the World, shall be distributed to the said corporation, as guardian of the beneficiaries in such policy named, and is not to be considered as a part of the property referred to herein."

The appellant contends that the phrase "age of maturity," as used in the will is synonymous with the term "legal majority," while the appellees contend that it imports simply maturity of mind and character, the combined result of age, experience, and education.

In the interpretation of the language of every will the prime object is to ascertain the real intention of the testator. The words of the will should be given their usual and ordinary meaning, unless the clear intention to use them in another sense can be gathered from the language of the will itself. The word "maturity," or the phrase "age of maturity," as used in a will is not one of invariable meaning, but its meaning must be determined from the context or the connection in which it is used. "Age of maturity," in its ordinary and usual acceptation, imports maturity of mind, character, and judgment, the combined result of age, experience, and education, and is not synonymous with "legal majority;" and when used in a will, thes words should be given their usual and ordinary meaning unless there is something in the will to indicate that the testator intended to use them in a different sense.

In the case of *Convict's Executors* v. *King*, 13 N. J. Eq. 375, it was held that the word "maturity," as used in a clause of a will was not synonymous with "legal

majority," but merely imported maturity of mind and character, the combined result of age and education; while, in the case of *Carpenter* v. *Boulden,* 48 Md. 122, where the will provided that a legacy should be paid to the legatee when she reached lawful age, with a limitation over in the event the legatee died "before maturity without issue," the word "maturity" was construed to mean the same thing as the testator had expressed by the word "lawful age."

In the case of *Cruikshank* v. *Cruikshank,* 39 Misc. Rep. 401, 80 N. Y. S. 8, it was held that the word "maturity," as used in the will there being construed, meant maturity in law or legal majority; but in that case the word was used in connection with the word "minority" in such a way as to clearly indicate that the testator intended to use it as synonymous with "legal majority," as shown by the following language of the court:

"Thus we have the word 'minority' used in limitation of the term during which the income shall be applied to the 'support, education, and maintenance of such issue,' and then, when majority is reached—when minority is passed—such application of the net income shall cease. If the issue shall die before 'maturity'—an inapt expression, indeed, but this is the holographic will of a layman—the principal is to go to testator's remaining children; otherwise to 'such issue.' The payment over of the principal is deferred until the time limited for the 'support, education, and maintenance of' the issue shall have lapsed, and hence the word 'maturity,' as used here, must be held to mean maturity in law, or when such issue shall have reached majority."

In the case at bar, we find nothing in the will to indicate an intent on the part of the testator to use these words in the sense of legal majority. There is about ten years' difference between the ages of the testator's youngest child and the next oldest; the estate is small, and the income therefrom negligible; and since there is nothing in the will to indicate an intent to use the words

in other than their ordinary and usual sense, we think the court below was correct in construing the phrase to mean maturity in mind, character, and judgment. In the final decree, the court below found as a fact that the testator's youngest child was seventeen years of age, and by reason of age, experience, and education had reached the age of maturity within the meaning of the phrase as used by the testator. It was further ordered that the property involved should be sold by the trustee, and the shares of the three adult distributees paid to them, and that the interest of the minor should be retained by the appellant in its capacity as guardian of said minor. We think this decree was in all respects correct, and it will therefore be affirmed.

*Affirmed.*

MILLER, STATE REVENUE AGENT, v. GORE *et al.**

(Division A.  Feb. 21, 1927.  Suggestion of Error Overruled April 18, 1927.)

[113 So. 203.  No. 25747.]

1. COUNTIES. *State revenue agent may recover excessive sum loaned by board of supervisors out of county sinking fund (Hemingway's Code, sections 3704, 7056).*

   Under Laws 1912, chapter 234 (Hemingway's Code, section 3704), attempt to loan by board of supervisors out of county bond-sinking funds in an amount nearly double the assessed value of security given therefor is unauthorized and illegal, and under Code 1906, section 4738 (Hemingway's Code, section 7056), state revenue agent had authority to sue for and recover on behalf of county the sum so loaned.

2. COUNTIES. *State revenue agent held entitled to commission on amount paid after action to recover illegal loan by supervisors from county sinking fund (Hemingway's Code, section 7066).*

   Under Code 1906, section 4748 (Hemingway's Code, section 7066), relative to compensation of state revenue agent, he is entitled to recover twenty per cent, commission on bringing suit to recover