### 10361 ·

### LEMMON v. McELROY *ET AL.*

### (101 S. E. 852.)

1. WILLS—INTENTION OF TESTATOR GOVERNS.—In all cases calling for the construction of a will, the intention of the testator must be sought and given effect, if it is lawful.

2. WILLS—INTENTION MUST BE ASCERTAINED FROM LANGUAGE AND SURROUNDING CIRCUMSTANCES.—The intention of testator must be ascertained by the language used, aided by the surrounding circumstances, viewed in the light of the settled principles of construction.

3. WILLS—PRIMARY MEANING OF "FAMILY" IS CHILDREN.—Though "family" may, under different circumstances, mean a man's household, consisting of his wife, his children, and servants, or may mean wife and children, or only children, the last meaning is the primary meaning, which will be given to the word when used in a will, unless the context indicates a contrary intention.

4. WILLS—CONTEXT HELD TO SHOW THAT FAMILY MEANT CHILDREN.—Where the testator made a gift for the use of his sister and her children, if she should have any, but, if not, then to her brothers and sisters or their families, and another paragraph of the will likewise made a gift to a brother of testator and his children, the context indicates an intention to include by the term "families" only children, not the wife, of a brother.

5. WILLS—GIFT OVER TO BROTHER OF LEGATEE AND HIS FAMILY CONTINGENT ON DEATH OF LEGATEE WITHOUT ISSUE.—Under a gift for the use of a sister of testator and her children, with a gift over, in the event she have no children, to her brothers and sisters and their families, the gift over is contingent on the death of the sister without children, and on the brother being in existence or having children at the death of a sister, so that his widow cannot take as devisee or legatee of her husband, who died before the first beneficiary.

6. WILLS—GIFT TO CLASS VESTS AT TIME OF DIVISION.—Where the devisees in remainder compose a class, and the only words of devisee are a direction to divide the property at a specified time, the gift will not vest until the time of division.

Before GARY, J., Fairfield, Spring term, 1919.   Affirmed.

Suit by James T. Lemmon, as administrator of the estate of Sarah McElroy, deceased, against Janie Ferguson McElroy and others, for the construction of a will.   From a decree construing the will unfavorably to her, defendant, Janie Ferguson McElroy, appeals.

The decree of Judge Gary, in the Court below, was as follows:

This is an action to construe the will of Robert McElroy, deceased, under which Sarah McElroy received the funds which are now in the hands of her administrator.   The will is dated July 19, 1873, and was admitted to probate in 1890 by the Judge of probate for Berkeley county.   The contest is as to the proper construction of the first clause of the will, which is as follows:

"I hereby give and bequeath to my sister, Sarah McElroy, the sum of ten thousand dollars in cash, to be invested in first mortgage bonds of any solvent railroad company; to be invested from time to time as mortgages become due, as I consider this the safest investment.   This does not include her share in the policy of my life, namely, twenty-five hundred dollars, which I wish invested in the same way.   Should she marry, the whole amount is to be held by her to her sole and separate use, and to the use of her children, should she have any, free from the interference and control of her husband; should she died without children, this amount is to be equally divided among her brothers and sisters, or their families."

Sarah McElroy never married and had no children.   She died in 1917.   Alexander McElroy, a brother of testator who was married twice, died in 1907; his children by his first marriage having predeceased him, leaving Fannie Ferguson McElroy, his widow by his second marriage.   The defendant, the said Fannie Ferguson McElroy, claims in her answer that, as the family of Alexander McElroy, deceased, she is entitled, under the terms of the will of said Robert McElroy,

to one-fourth interest in the said fund. The question in the case is: What was the intention of the testator, as gathered from his will? Was she included in the term "family?" It is contended by the other parties that the word "family" must be construed to mean children of the brothers and sisters; that it means blood relationship, and excludes the said Fannie Ferguson McElroy from any interest in said estate.

The testator, Robert McElroy, was a bachelor, and at the date of his will he had three brothers, Alexander McElroy, James McElroy, and William McElroy, and three sisters, Sarah McElroy, Isabel McElroy, and Margaret A. Lemmon. James McElroy died about 1871, predeceasing the testator, leaving a widow and one child, Connor McElroy. His widow has since died, and the said defendant, Connor McElroy, is the sole surviving heir at law of his father and mother. Isabel McElroy died in 1885, unmarried and without issue. The testator died in 1890. Alexander died in 1907. Williaim died in 1915, and his children and heirs at law are Nora Tillery, Hattie Graham, Mary West, Lillie Edington, William McElroy, and Robert McElroy. Sarah McElroy died in 1917 without children. Hence, at the death of the testator, he left surviving .him his sisters, Sarah McElroy and Margaret A. Lemmon, his brothers, Alexander and William McElroy, and his nephews, Connor McElroy (son of James McElroy). Alexander McElroy married the second time in 1891, a year after the death of the testator.

The term "family," when used in the Constitution and statutes of South Carolina with reference to the homestead exemption, has undergone judicial construction, and if we were called upon to define the word when so used, we would have but little difficulty. See *Moyer v. Drummond,* 32 S. C. 165, 10 S. E. 952, 7. L. R. A. 747, 17 Am. St. Rep. 850; *Moore v. Parker,* 13 S. C. 486; *Bradley v. Rodelsperger,* 3 S. C. 226. But when it comes to construing the word, when used in a bequest in a will, a more difficult question is presented.

Here, as in all cases calling for the construction of a will, the intention of the testator must be sought, and, when it is ascertained, effect must be given to it, if it is lawful.

1, 2 This intention must be ascertained by the language used, aided by the surrounding circumstances, viewed in the light of well-settled principles of construction. We have quoted above the language to be construed.

The word "family" is used in various significations, some more restricted, others more extended; the general scope and purview of the statute or of the will having to be considered in each. It is used to indicate, first, the whole

3 body of persons who form one household, thus including also servants; second, the parents, with their children, whether they dwell together or not; and, third, the whole group of persons closely related by blood. Curt. Dict. It may mean a man's household, consisting of himself, his wife, children, and servants; it may mean his wife and his children, or his children, excluding his wife; or, in the absence of wife and children, it may mean his brothers and sisters, or next of kin; or it may mean the genealogical stock, from which he may have sprung.

Which of these various and varying significations did the testator have in mind? "The word 'family' is not a technical word, and, being of flexible meaning, it must be construed according to the context of the will. As was said above, in one sense, it means the whole household, including servants, and even boarders and lodgers. In another, it means all the relations who descend from a common ancestor. Its primary meaning, however, is 'children,' and so it must be construed in all cases, unless the context shows that it was used in a different sense."

An authority upon this point is the case of *Pegg v. Clarke,* L. R. 3 Ch. Div. 672, in which the Master of Rolls, in delivering judgment, said: "Every word which has more than one meaning has a primary meaning, and, if it has a primary meaning, you want a context to find another." What, then, is the primary meaning of "family?" "It is children;

that is clear, upon the authorities which have been cited." See, also, 2 Jarman Wills, 90, *et seq.* And, again: "In a bequest or a devise for the benefit of one and his family, it has been held that the word 'family' *prima facie* means children, and that a gift to A. and his family should be read as a gift to A. and his children." Am. & Eng. Enc. Law, vol. XIII, p. 870, text, and citing numerous English and American decisions. "On the whole," says Schouler, "the word 'family' is one of variable meaning, and for its true import in any case we must consider the general language of the will." Volume I, p. 682.

Studying the general language of the will before us, we see that the testator has been very particular to provide that the bequest in the first clause of the will should be for the use of Sarah and her children, should she have any children, but in no event could her husband receive any portion of it, presumably because he was no blood relationship to the testator; in case Sarah had no children, then the bequest was to her brothers and sisters, or their families. It is hardly to be believed that the testator would be so particular to provide that the bequest should be free from interference or ownership by one who was not of the same blood, while the bequest was in the hands of Sarah and her children, and yet be so indifferent upon that point if the bequest should fall into the hands of her brothers or her sisters. This being inconceivable, we must conclude that the testator used "families" in the primary sense, and as interchangeable with and equivalent to children.

The same idea is carried out in paragraph 2 of the will. This construction is borne out by the disposition made in paragraph 3, where the testator bequeaths $8,000 in cash to his brother, William McElroy, to be invested in land for himself and his children, thus excluding the possibility of a participation in the bequest by a wife who was not of the blood. The evident desire of the testator to recognize his children and their children as the beneficiaries of his bounty,

which appears throughout the will, leads us to the conclusion that, when he used the word "family," it was used as donating children, and was used interchangeably with the word "children."

Taking this view of the case, it would be useless to multiply authorities along the line above set out, or to protract this decree further than is necessary to determine whether, since the defendant, Fannie Ferguson McElroy, cannot participate in the distribution by reason of being the "family" of Alexander McElroy, can she participate in any other relation?

As I construe the will, there is no vested interest given to Alexander McElroy, but the interest given is contingent merely. It is contingent, first, upon Sarah McElroy dying without children, and upon the further contingency that either Alexander or his family should be *in esse* at the time when the distribution might be made, to wit: Upon the death of Sarah McElroy without children. The first of the contingencies has happened. but the second has not, and cannot. Alexander took no interest, therefore, which his wife might now inherit as his heir at law or legatee.

Where there are no words of direct and immediate gift, but simply a direction that the trustees shall convey at a future time on a certain contingency, futurity is annexed to the substance of the gift, and survivorship at the time of distribution is an essential condition to the acquisition of the interest of the subject matter. *In re Baer,* 147 N. Y. 348, 41 N. E. 702.

Besides, the general rule is that where the devisees compose a class and there are no words of devise, except a simple direction to divide the property at a specified time, the gift will not vest until the time of division. *Dee v. Dee,* 212 Ill. 338, 72 N. E. 429. And, quoting from our own Court, we may say that "the general rule which has been drawn from the host of cases of this kind,

with which the books abound, is that, if futurity be annexed to the substance of the gift, the vesting is suspended, but, if it appears to relate to the time of payment only, the legacy vests instantly.

An important distinction is to be observed between a case where payment or distribution is deferred, not merely until the lapse of a definite interval of time, which will certainly arrive, but until an event which may or may not happen; the effect, it would seem, is to render the legacy contingent, unless perhaps in the case of a residuary bequest." *McGregor v. Toomer,* 2 Strobhart's Equity 59.

My conclusion, therefore, is that Mrs. Fannie Ferguson McElroy cannot participate in the division of the property in question, either as the "family" of Alexander McElroy, or as his devisee or legatee. It is so ordered, and it is further ordered that the parties hereto have leave to apply and to receive such further order as may be deemed proper to carry into effect this decretal order.

*Messrs. Hagood, Rivers & Young* and *McDonald & McDonald,* for appellant. *Messrs. McDonald & McDonald* submit: *Appellant is embraced in the word "family" as it is used in the will of Robert McElroy:* 65 Mo. 670; 8 Allen (Mass.) 339; 2 Bland (Md.) 627; 64 N. H. 354; 1 Keen 176; 69 Conn. 416; 137 Mass. 50; 128 Mass. 334; 10 Ala. 722; 21 Ill. 40; 26 Fla. 31; 619 Mo. 415; 68 Mo. 388; 48 Ark. 539; 12 Am. & Eng. Enc. L. 872-3; 55 Ala. 318; 14 Howard Prac. 519; note 61 Am. Dec., pp. 588-589; 3 S. C. 226; 13 S. C. 318; 32 S. C. 167; 36 S. C. 576; 4 L. R. A. (N. S.) 365 (note); 64 N. H. 354; 10 Atl. 76-78; 6 N. Y. Supp. 161; 53 Hun. 149; 58 S. W. 529-30; 109 Ky. 113; 83 Conn. 369; 77 Atl. 770-2; 93 N. Y. Supp. 599; 51 Mich. 494; 16 N. W. 71; 129 N. Supp. 814-15; 3 Words and Phrases, Title "Family," pp. 2673-2691, and 2 Words and Phrases, Second Series, Title "Family," pp. 461-66. *However, the construction of the word "family" as used in the will of Robert McElroy is not necessarily an issue in*

*this case.   Alexander McElroy took a contingent interest
in the fund bequeathed to Sarah McElroy, and this contin-
gent interest passed to appellant under his (Alexander's)
will:* Moorman's Manual in Limitations of Estates; 2 Hill
Ch. 638; 10 Rich. Eq. 394; 23 S. C. 225; 26 S. C. 462; 44
S. C. 503; 20 Enc. L. 849; 2 Hill Eq. 235; 66 S. C. 370.

*Mr. W. D. Douglas,* for respondent, submits: *That appel-
lant is not entitled to take under the name of "family:"* 179
Fed. 163-172; 55 Fed. 783; 9 Hare 708; 3 W. Va. 597; 8
Ves. 604-607; 1 Sim. (N. S.) 368; 45 Atl. 73; 194 Pa. 152;
75 Am. St. Rep. 692.   *It cannot be established, without per-
verting the interest of testator, that appellant is entitled to
one-fourth of the estate because her husband took a trans-
missible vested interest:* 23 S. C. 225, and 26 S. C. 450, dis-
tinguished from case at bad.   *The testator intended that
those who should take, upon the happening of the contin-
gency of Sarah's leaving no children, would do so by the
words of the bequest, and not through their parents or hus-
bands or wives:* 23 R. C. L., secs. 97, 552; 74 S. C. 42, and
cases there cited.

January 27, 1920.

The opinion of the Court was delivered by MR. CHIEF
JUSTICE GARY.

For the reasons therein stated, the judgment of the Cir-
cuit Court is affirmed.

MESSRS. JUSTICES HYDRICK and WATTS concur.

MR. JUSTICE FRASER.   I dissent.   It is conceded that
the word "family" is one of very broad signification, and
may include, not only the wife, but even the servants.   In
*Bradley v. Rodelsperger,* 3 S. C. 227, we find:

"The Constitution has not given any definition of the
term 'family,' nor indicated any of its necessary ingredients;
the term must, therefore, be taken in its ordinary sense.   In
this sense, it is not essential that it should include children."

There were no children in that case, and the widow was declared to be the family. In *Garaty & Armstrong v. DuBose,* 5 S. C. 500, it was said that this provision must be strictly construed. Under a strict construction of our laws, the word "family" includes a childless widow. It is not profitable to review all the cases. It is enough to say that time and again a childless widow is the family. There seems to be conflict of authorities in other jurisdictions, but none of them are binding. The decisions of this State which are binding declare that in its ordinary sense the word "family" includes a childless widow, as here.

It is said, however, that the context shows that the word "family" means "children." I see nothing in the context to show it. When different words are used, the indication is that the different words are used to convey different ideas. It is not conclusive, as many people are obsessed with an idea that they should use supposed synonyms to convey the same idea; but the use of a different word indicates a different meaning, and the indication here is that the use of the word "children" and "family" mean different things. There is nothing in this will that provides that the share given to a sister shall go to the children, except the share given to that particular sister; *i. e.,* the share given to Miss Sarah goes to the children of Miss Sarah, if any, and the share to Miss Isabel to the children of Miss Isabel, if any. In the event of the death of either without children, then the share is to be divided among her brothers and sisters, or their families. This provision is made as to both. Different words are applied to different conditions, and I see no internal evidence in the will that the two words are intended to mean the same thing; *i. e.,* that "family" should be construed to mean "children." Unless controlled to binding authority, I am as unwilling to exclude the wife from the word "family" as I am to exclude her from the institution for which the word stands. This will is not the work of an unskilled blunderer, who makes confusion. The language

of the will is simple and excellent English, and unless there is uncertainty in the use of the word "family," is perfectly clear. It will be observed that the remainder is not given to "*my* brothers and sisters," but to the brothers and sisters of the legatees. The same persons would take, but the personal relation to the testator is secondary to the personal relation to the legatees. The widow of the deceased brother is within the word "family" as used in its ordinary sense, and as there is nothing in the will or record to suggest that the word was not used in its ordinary sense, I think it should be construed.

For these reasons I dissent.

MR. JUSTICE GAGE. I concur in this opinion; in my judgment it is plainly right. Had Janie Ferguson children by Alexander and now living, nobody will deny that such children and Janie would take as the family. The case is not altered that the family is limited to Janie alone.