## 11106

### CLARDY *ET AL.* v. CLARDY

(115 S. E., 603)

WILLS—DEVISE IN TRUST FOR DAUGHTER AND TO THE HEIRS OF TES-
TATOR'S BODY HELD TO CREATE VESTED REMAINDER IN TESTATOR'S
DAUGHTER.—A will giving to a trustee for the use of the testator's
daughter all his estate, directing the trustee to keep and manage
the property for the daughter "for her benefit and to the heirs of
my body, she having the possession and control of the property
during her life," *held* to create a vested remainder in the daughter,
she being the only heir.

Before MOORE, J., Anderson, 1921.    Affirmed.

Action by O. J. Clardy and others against A. B. Clardy. Decree for defendant, and plaintiffs appeal. Affirmed.

The decree of his Honor, Judge Moore, referred to in the opinion, was as follows:

This is an action for the recovery of real estate. The complaint sets forth that R. O. Elrod, a citizen of Anderson. County, on August 15, 1863, made his last will and testament, which, omitting formal parts, is as follows: "I, Richardson O. Elrod, being of sound mind and memory and now going to the army of the Confederate States of America, and knowing the uncertainty of human life, do make this my last will and testament. That is to say: First, I will and bequeath to Thomas Martin in trust for the use of my

NOTE—As to time for ascertaining member of class described as testator's heirs, next of kin, relations, etc., to whom an estate in real or personal property is limited by way of remainder or executory gift, see notes 33 L. R. A. (N. S.), 1, and 13 A. L. R., 616.

daughter, Mary Francis Elrod, all of my estate, both real and personal, consisting of a tract of land lying near White Plains, containing one hundred and forty (140) acres, more or less, also five negroes, to wit: Mary, Julius, Hannah, Lucy, Samuel, also all my moneys, notes and books of accounts, and all of my estate of every description, which I direct my trustee to keep and to manage for my said daughter for her benefit and to the heirs of my body, she having the possession and control of the property during her life and to be taken care of by Thomas Martin as above set forth."

The complaint alleges that he died leaving this instrument of force, and that it was duly admitted to probate in Anderson County; that defendant is in possession of a tract of land (described in the complaint) which is a part of the tract mentioned in said will; that Mary Frances Elrod was the only child of the said R. O. Elrod, and that she died on or about June 22, 1921, leaving as her only children the plaintiffs, all of whom are *sui juris,* and that they are heirs of the body of the said R. O. Elrod. It is admitted that plaintiffs are the lawful children of Mary Frances Elrod, who married Clardy, and had no other children; that she was the only child of R. O. Elrod, and that she survived him, and the plaintiffs admit for the purpose of this argument that the said Mary Frances Elrod Clardy many years ago by lawful deed conveyed away in fee simple all her interests in the real estate described in the complaint to persons other than plaintiffs.

The answer among other things denies the correctness of the will, but that issue is not now involved. The issue before the Court arises under a demurrer, which for present purposes must be taken as admitting the correctness of the language of the will as set out in the complaint. The defendant demurs upon the ground that the complaint does not state facts sufficient to constitute a cause of action, since, under a proper interpretation of the alleged will of R. O. Elrod, Mary Frances Elrod, later Clardy, was the only person an-

swering the description of "heirs of my body" at testator's death, and, therefore, took not only a life estate, but an estate in fee simple in the tract of land described in the complaint.

Who are the heirs of the body of R. O. Elrod under this will? At what point of time did testator mean for it to be determined who then answered the description "heirs of the body"? Is the remainder in this case a vested remainder or a contingent remainder? These are the considerations upon which the Court must determine the single issue presented for its decision. In the absence of any language in the will clearly indicating an intention to exclude her from the fee, the Court thinks that Mary Frances Elrod would take such fee as the only person answering the description of heir of the body of R. O. Elrod at his death. "The well-recognized rule is that when there is a devise to 'heirs' as a class, they take at the death of the testator, unless a different time is fixed by the word 'surviving,' or some other equivalent expression." *McFadden v. McFadden* (1916), 107 S. C., 104; 91 S. E., 987; *Avinger v. Avinger,* 116 S. C., 130; 107 S. E., 26. As supporting this principle see the cases cited in the opinion in the McFadden case, and especially see *Rochell v. Tompkins* (1845), 1 Strob. Eq., 114; *Seabrook v. Seabrook* (1859), 10 Rich. Eq., 495; *Glover v. Adams* (1860), 11 Rich. Eq., 264; *Shaffer v. McDuffie* (1868), 14 Rich. Eq., 146; *Boyce v. Mosely,* 102 S. C., 361; 86 S. E., 771.

In the last-named case the land was deeded "to Angelina and Thomas G. Bacon during the terms of their natural lives, or the lives of either of them, and afterwards to revert back to my estate; and be distributable amongst my next of kin." The Supreme Court held that this deed conveyed successive life estates to A. and B. with subsequent life estates to the next of kin, while the fee remained in the grantor and descended at his death to "the sole heir of the grantor," Angelina (Mrs. Bacon). See 102 S. C., at page 372; 86 S. E., at page 772.

At page 38, Moorman on Limitations, it is said: "The term 'heirs,' in its primary sense, means the individual fulfilling that description at the time of the death of the ancestor—a distributee under the statute of distributions—to whom the estate passes in case of intestacy. The burden of showing that the term was not used in that sense rests upon those so claiming. *Seabrook v. Seabrook,* McMul. Eq., 206; *Clark v. Mosely,* 1 Rich. Eq., 396; 44 Am. Dec., 229; *Evans v. Godbold,* 6 Rich. Eq., 26; *Shaffer v. McDuffie,* 14 Rich. Eq., 147."

In the Avinger case, Daniel Avinger left a will reading as follows: "The residue of my estate, real and personal, I give, bequeath and dispose of as follows, to wit: To my beloved wife, the land and appurtenances situated thereon, during the term of her natural life, and after her death to be divided equally among my heirs." Avinger left a widow, Laura, and a number of children by her and former wives; it was contended that she did not take as an heir of her husband in addition to taking a life estate, but the Supreme Court merely stated the rule to be otherwise as laid down in the McFadden case. In a concurring opinion Mr. Justice Cothran referred to the fact that the issue must be determined in such cases by the character of the remainders conveyed to the heirs of testator. In a note in 33 L. R. A. (N. S.), p. 46, it is said that two reasons are given in support of this construction of the word "heirs" and similar words, one being "that it gives the words of description their natural and *prima facie* meaning" (33 L. R. A. [N. S.], p. 4) ; and (2) "a reason more frequently brought forward is the preference of the law to construe a remainder as vested rather than as contingent." If the remainder is a vested remainder, of course, the taker of the fee would be determined at the death of the testator. "The general rule is that a gift to a testator's heirs, though after the death of a life tenant, is a gift to those who were the testator's heirs at law at the time of his decease." 28 R. C. L., 247.

Keeping in mind the principle that a remainder will not be held to be contingent if it-can be construed as a vested remainder, since the Courts favor the early vesting of estates, noting carefully the language of the will in the case at bar, and comparing it with the language in some of the above-cited cases, it would seem clear that the remainder here is a vested remainder.

It is contended on behalf of plaintiffs that there is an inconsistency between an intention to provide a life estate for Mary Frances, and a further intention that she should take as a remainderman in fee. The Court cannot see the inconsistency, and the South Carolina cases are otherwise, as above shown. In the case of *Glover v. Adams,* above, the Court said: "It has been conceived that to allow the husband to take as heir would defeat the intention of the parties to the deed. The intention of parties is not so much to be conjectured, as derived, by construction, from their words. In this case, it has been argued that it was not intended to provide for the husband under the description of heir, because he was provided for under another designation. But it will hardly do to blot out one express provision, because there is another express provision. It seems to be going too far to make the husband's exclusion or inclusion depend upon the fact that provision has been made for him, unless we can be certified that that provision was intended to exclude all further provision; and how can we know that, in the case of express words, that do include him? How can we know, in the absence of language to inform us, that the words, heirs of the wife, were not intended to have their natural meaning, and designate heirs living at her death, but those living at her husband's death? Do they mean the one or the other, according as the husband is or is not provided for?"

In a note in 33 L. R. A. (N. S.), pp. 10, 11, the annotator says: "If a testator bequeaths property to a class by a particular description, and the question arises whether a

certain individual who comes within the description ought or ought not to be excluded, it is not sufficient, in order to exclude him, to show the absence of a special intention to include him, but that a clear and unambiguous indication of an intention to exclude him must be shown; that there is no such absurdity or unreasonableness in a person taking a life interest by virtue of a particular gift to him *nominatim* and a further interest, either alone or jointly with others, as the case may be, under a gift in the same will to a class which, as described by the testator, clearly includes him; especially since it is probable that the testator did not concern himself with the consideration of the question who would be his next of kin, but simply intended that, at all events, the first taker should have a life estate, and then that the property should go to his next of kin, whoever he, she, or they might happen to be." The annotator at the same pages says further: "As to the second conclusion, that, in order to accomplish the exclusion of the life tenant, the period for ascertaining the persons answering the description of testator's next of kin must be postponed till the death of the life tenant, it is said that if the first taker must be excluded, the proper way to effect that object would simply be to exclude him, and to hold that the persons to take under the gift to the next of kin should be those who would answer the description at the testator's death if the life tenant were altogether left out of consideration; that because the first taker is to be excluded, it does not follow that others would be testator's next of kin at the time of his death, but who might die in the meantime also are to be excluded, as might be the case if the time for ascertaining the class were thus postponed."

The late South Carolina case of *Bartell v. Edwards,* 113 S. C., 217; 102 S. E., 210, is cited as opposed to these conclusions. It appears to this Court, however, that the decision upon the second point passed upon in the Bartell case was not necessary to dispose of the case, and might be re-

garded as dictum; and it further seems that this case is out of line with the current of authority in this State. No reference was made to the McFadden case or the other previous South Carolina cases on the point. An effort was made by the defendant to harmonize this case with the other cases, but the argument was not convincing. See *Welch v. Blanchard* (Mass. 1911), 33 L. R. A. (N. S.), pp. 1 to 53, for a very full note upon the question here involved. The reasons for supporting the rule are given as well as the argument against it. Citing many English and American cases, the author says at page 5: "Since the law favors the vesting of estates, and it is an established rule of construction not to read a limitation in a will as being a contingent remainder unless such clearly appears to have been the testator's intention, it follows that where land is given to one for life, or any other estate upon which a remainder may be limited, and after the determination of that estate to a person sustaining a given character, as heir at law, heir male, or next of kin, of testator, the remainder will vest in the person or persons who will fill that character at the death of the testator, unless it can be plainly and distinctly made out from the will that the testator intended otherwise." At page 10, citing a long list of cases, the annotator says: "The decided weight of authority may be said to be to the effect that the fact that, at the time of the making of the will, the person to whom a particular estate is given will presumably be at testator's death the sole member of the class to whom the same property is limited is not of itself sufficient to overcome the *prima facie* meaning of the words of limitation."

Upon the narrower topic, "membership of first taker in class," the disposition upon the part of some early American cases to follow the earlier English cases, which excluded the first taker from the class. But the annotator quotes 2 *Jarman on Wills,* star p. 987, as disapproving these earlier English cases and stating that at the present day it is not probable that any English Courts would render such de-

cisions (see 33 L. R. A. [N. S.], 809, note) and, as clearly pointed out, shows that the great weight of modern authority, both English and American, is otherwise (33 L. R. A. [N. S.], 10, Note).

It seems to the Court that the demurrer should be sustained, and it is so ordered. Let the complaint be dismissed with costs.

*Messrs. Wilson & Neely* and *A. H. Dagnall,* for appellants, cite: *Active trust:* 106 S. C., 245; 51 S. C., 271. *Intention governs as to when those who constitute a class are to be determined:* 116 S. C., 130; 107 S. C., 101; 113 S. C., 217; 113 S. C., 537; 113 S. C., 378; 102 S. C., 381; 11 Rich. Eq., 264; 10 Rich. Eq., 495; 6 Rich. Eq., 267.

*Messrs. Martin & Blythe,* and *Bonham & Allen,* for respondents, cite: *When there is a devise to a class as heirs they take at the death of testator:* 107 S. C., 101; 1 Strob. Eq., 114; 10 Rich. Eq., 495; 11 Rich. Eq., 264; 14 Rich. Eq., 146; 102 S. C., 361; Moorman, Lim. of Estate, 38; 116 S. C., 130; 28 R. C. L., 247; 32 L. R. A. (N. S.), and note. *Rule changed where distinct words of survivorship are used:* 26 S. C., 451; 30 S. C., 184; 34 S. C., 74; 46 S. C., 27; 85 S. C., 59; 113 S. C., 217.

January 18, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

In his decree his Honor, the Circuit Judge, uses this language:

"The late South Carolina case of *Bartell v. Edwards,* 113 S. C., 217; 102 S. E., 210, is cited as opposed to these conclusions. It appears to this Court, however, that the decision on the second point passed upon in the Bartell case was not necessary to dispose of the case, and might be regarded as dictum; and it further seems that this case is out of line with the current of authority in this State. No ref-

erence was made to the McFadden case, or the other previous South Carolina cases on the point. An effort was made by the defendant to harmonize this case with the other cases, but the argument was not convincing."

The facts in *Bartell v. Edwards, supra,* were materially different from those in the case now under consideration; and we see no reason to recede from the doctrine therein announced.

For the other reasons therein stated by his Honor, Judge Moore, his able decree is affirmed.

MESSRS. JUSTICES FRASER, COTHRAN, and MARION concur

MR. JUSTICE WATTS did not sit.

MR. JUSTICE COTHRAN: I concur in affirming the circuit decree for the reasons therein stated, and am of the opinion that the cases of *Lemmon v. McElroy,* 113 S. C., 537; 101 S. E., 852, and *Bartell v. Edwards,* 113 S. C., 217, 102 S. E., 210, which upon the point decided herein are out of line with the weight of authority in this state and elsewhere, should be distinctly overruled.