Battle, J.
 

 "We concur in the opinion of his Honor who tried this cause, that there was no evidence of the will’s hav
 
 *307
 
 ing been procured by the fraud and undue influence of Ann Allmond or any other person. It was abundantly proved, and is conceded, that the alleged testator was of sound and disposing mind and memory, when he executed the script which is propounded for probate as his will. The only circumstance from which it is sought to be inferred that he executed it under the effect of fraud, or under the exercise of undue influence, is that Ann Allmond, his housekeeper, a white woman, induced him to believe that he was the father of her mulatto child. Supposing that he did believe the child was his, and that the mother of it told him so, there is not the slightest testimony to show that she ever even asked him to make a will in favor of her and the child, or that she knew, before the will was made, that he intended to make one, or, afterwards, that he had made it. An eminent Judge in the Ecclesiastical Courts in England, (Sir John Niciiol,) said in the case of
 
 Williams
 
 v.
 
 Gaude, 1
 
 Hagg. Rep. 581, “thatthe influence to vitiate an act, must amount to force or coercion, destroying free agency; it must not be the influence of affection or attachment; it must not be the mere desire of gratifying the wishes of another; for that would be a very strong-ground of support of a testamentary act.” In the present case, what influence is it shown that Anne Allmond had over the alleged testator, amounting to force or coercion, and destroying his free agency ? None whatever. At most, it is said that, she made him believe that he had begotten a child by her, which every body, but himself, could see was a mulatto. Surely that alone cannot destroy a will which the mother is not shown to have had the slightest agency in procuring. It has been said by a satirical writer, that many a married man fondles children as his own, which his wiser wife knows to belong to another. Would a will in favor of such children be set aside upon the ground that the trusting husband had been imposed upon, and had, on that account, acted under undue influence? Certainly not; and yet, to set aside the present, will, for the cause assigned, would be almost as bad. The truth is, that the old man, being childless by his wife, took a
 
 *308
 
 strange fancy to the child of his housekeeper, and whether it were his or not, he had a father’s love for it, and our law imposes no prohibition upon a man to prevent him from bestowing his property upon the object of his affection. Affection or attachment, as Sir John Nichol said, “ would be a very strong ground of support of a testamentary act.”
 

 Per Curiam,
 

 Judgment affirmed.