CENTRAL CAROLINA BANK & TRUST COMPANY, TRUSTEE OF THE "THOMAS L. SHEPHERD FUND" UNDER THE LAST WILL AND TESTAMENT OF W. T. SHEPHERD, DECEASED, PETITIONER v. ELIZABETH O'KELLY BASS; GAYNELLE O'KELLY BUNTING; PAUL ERVIN DUCKWORTH, HUSBAND OF ROSE LEE McMAHON DUCKWORTH, DECEASED; IMOGENE O'KELLY SMITH; VIRGINIA O'KELLY NICHOLS; MARTHA O'KELLY BROCKETT; CARMA MARTIN EARLEY; LESLIE E. MARTIN, JR.; JOY MARTIN, MINOR, BY THOMAS H. LEE GUARDIAN AD LITEM; DORIS LINDSEY; THOMAS LINDSEY; NANCY CAMPBELL KENNEDY; THELMA C. HALL; THEODORE CAMPBELL; SALLIE BEAVERS; ELLA MAE BEAVERS BELVIN; H. RAYMOND WEEKS, JR., EXECUTOR OF THE ESTATE OF ELSIE BEAVERS WEEKS, DECEASED; S. O. RILEY, HUSBAND OF PEARL RILEY, DECEASED; MRS. JOHN THOMAS BEAVERS, WIDOW OF JOHN THOMAS BEAVERS, DECEASED; NAOMI S. TILLETT; MRS. CATHERINE RIGSBEE, WIFE OF THOMAS EDGAR SHEPHERD, DECEASED, NOW MRS. G. T. RIGSBEE; ARTHUR EARL LUCAS, EXECUTOR OF THE ESTATE OF THOMAS L. SHEPHERD, DECEASED; ARTHUR EARL LUCAS, INDIVIDUALLY; ANNIE MOORE SHEPHERD DENNIS; MARION EUGENE DUCKWORTH AND CATHY YVONNE DUCKWORTH, MINORS. BY W. J. BROGDEN, JR., GUARDIAN AD LITEM; MRS. CORNELIA S. SHEPHERD, EXECUTRIX OF THE ESTATE OF JOHN H. SHEPHERD, JR., DECEASED; AND JOE C. WEATHERSPOON, GUARDIAN AD LITEM FOR ALL PERSONS *in esse* OR NOT *in esse*, KNOWN OR UNKNOWN, HAVING ANY INTEREST IN THE "THOMAS L. SHEPHERD FUND" UNDER THE LAST WILL AND TESTAMENT OF W. T. SHEPHERD, RESPONDENTS.

(Filed 27 August, 1965.)

**1. Wills §§ 43, 45—**

Testamentary direction that after the death of the life beneficiary of the trust set up in the will the trustee should pay over and deliver the corpus of the estate to testator's "next of kin" requires a distribution to testator's nearest of kin and not to testator's heirs or distributees generally unless it appears that testator intended a distribution under the principle of representation.

**2. Wills § 27—**

A will should be construed to give effect to the intent of testator as gathered from the language of the instrument considered as a whole in the light of the circumstances confronting testator at the time, and such intent must be given effect unless contrary to some rule of law or at variance with public policy.

**3. Same—**

Where it is apparent that a word or phrase used in one part of a will has a particular meaning, such meaning will ordinarily be attributed to such word or phrase when used in other instances in the same instrument.

**4. Wills § 45—**

Judgment that testator made his son's foster daughter the beneficiary of a trust because of his love and affection for her, and not because he mistakenly believed her to be his granddaughter, is not decisive of the

question whether he intended to include her as next of kin to take the corpus of another trust after a life interest to testator's son.

**5. Same—  Under terms of will in this case, life beneficiaries of income were excluded from next of kin entitled to share in corpus.**

The will in this case set up two trusts, one for the benefit of the foster daughter of testator's son with provision that the corpus be paid to her when she attained the age of 25 years, with further provision that should she die before that time without surviving child or children the corpus should be distributed to testator's "next of kin." The other trust was for the benefit of testator's son and provided that upon the death of the son the corpus should be paid to testator's "next of kin." It appeared that the son was an inebriate. *Held:* It being apparent from the language of the will and the surrounding circumstances that testator did not intend to include his son in the classification "next of kin", it follows that testator did not intend to include the foster child of his son as "next of kin" to take the corpus of the trust set up for the benefit of the son.

**6. Wills § 38—**

Under testator's will the income of two trusts was to be paid to testator's son and to the foster child of testator's son respectively in such proportion as the trustee in its discretion should deem best calculated to achieve the purposes therein set out, with further provision that upon the death of either the income not distributed should be paid to the survivor. *Held:* Income accrued but not distributed to the son at the time of the son's death must be paid to the son's foster daughter and does not pass under the son's will.

**7. Wills § 34—**

As a general rule a devise or bequest of the remainder to a class vests in members of the class as ascertained at the time of testator's death unless it appears from the terms of the will that testator intended the members of the class to be ascertained at the time of the death of the first taker.

**8. Same—**

The rule that the law favors the early vesting of estates is not a rule of law but a rule of interpretation and must give way when a contrary intent is apparent from the will.

**9. Same—**

Whether a remainder is contingent or vested is not dependent upon whether the amount of the estate which will remain for distribution is uncertain but whether the persons who are to take the remainder are uncertain, and therefore the fact that the trustee of the trust set up by will is authorized to invade the corpus for the benefit of the life beneficiary is not determinative of whether the remainder after the life estate is vested or contingent.

**10. Same—**

Where a will directs that after the termination of the life estate therein set up the corpus should be divided between members of a class, the post-

ponement of the enjoyment of the remainder is ordinarily for the purpose of letting in the prior life estate, and the remainder ordinarily vests at the death of testator unless the will clearly uses "words of futurity" to indicate testator's intent that only those take who answer the roll at the termination of the particular estate.

**11. Same—**

Testator set up a trust for the benefit of his son for life with provision that at the death of the son the corpus should be distributed to testator's "next of kin." At the time of testator's death the son was the sole member of the class of testator's "next of kin" and it was apparent from the will that testator intended the son to be excluded as a member of the class to take the remainder. *Held:* Since no one could qualify as testator's next of kin as long as the son lived, the remainder is contingent.

PARKER, J., took no part in the consideration or decision of this case.

APPEAL by respondents Dennis; Lucas; Bass, Bunting, Tillett, Shepherd (Bass group); Beavers, Belvin, Weeks, Campbell, Hall (Beavers-Belvin group), from *Mallard, J.,* March 30, 1964 Civil Session of DURHAM. This appeal was docketed in the Supreme Court as Case No. 670 and argued at the Fall Term 1964.

This action was brought by petitioner, Central Carolina Bank and Trust Company, the duly qualified and acting trustee under the will of W. T. Shepherd, under the Declaratory Judgment Act, Gen. Stats. ch. I, art. 26, for a construction of the will. All interested parties were properly before the court and waived a jury trial. From the pleadings, stipulations, documentary evidence, and testimony of witnesses, the judge found the following facts, which we have summarized insofar as possible in chronological order. For a better understanding of the facts, portions of the evidence are interpolated, as indicated.

Testator died March 30, 1939, leaving a last will and testament, dated January 11, 1937, which was duly probated. He was predeceased by his parents and his wife. Surviving him was a son, Thomas L. Shepherd, the only child testator ever had; three sisters; and the issue of a deceased sister and of a deceased brother. Also surviving was Annie Moore Shepherd (now Dennis), a 14-year-old girl to whom testator referred in his will as "my granddaughter." She was not, however, as will hereinafter appear, a blood relative of his.

In Item 3 of his will testator bequeathed "to my granddaughter, Annie Moore Shepherd," all the jewelry which had formerly belonged to his wife. In Item 4, he bequeathed his own personal effects, automobile, and household furniture to his son. In Item 5 testator gave all the residue of his estate to Durham Bank and Trust Company, petitioner's predecessor-trustee, upon the conditions and trusts following:

1.   To divide said residuary estate into two parts, one such part to consist of three-fifths (⅗) of said residuary estate and to be known and designated as "Thomas L. Shepherd Fund" and the other such part to consist of two-fifths (⅖) of the said residuary estate and to be known and designated as "Annie Moore Shepherd Fund."

2.   For and during the joint lives of Thomas L. Shepherd, my son, and Annie Moore Shepherd, my granddaughter, the Trustee shall pay over the net income, both from the said "Thomas L. Shepherd Fund" and the said "Annie Moore Shepherd Fund" as they may respectively be constituted from time to time, to the said Thomas L. Shepherd and/or the said Annie Moore Shepherd, quarterly or more often, in such proportions, either part to each or all to one, as the said Trustee may in its sole, absolute, and unfettered discretion consider best calculated to achieve the purposes hereinafter set out, *viz:*

It is my hope and purpose that the income from this trust may keep my son and granddaughter in comfort and furnish my granddaughter opportunities for such education and general intellectual advancement as she may wish and my Trustee shall consider advantageous. It is not my purpose that either of them shall be allotted funds which it may appear would probably be used for the advantage of any other person, except a relative of one of them by blood. Neither is it my intention that either shall be allotted amounts which my Trustee may believe or may by experience find is likely to discourage either of them from living a sober, upright, and useful life. Without intending in anywise to restrict the authority and discretion hereinbefore vested in my Trustee, I wish to state that my present opinion is that in the ordinary course of events it would probably be best to give the said Annie Moore Shepherd, my granddaughter, two-fifths (⅖) of the income from the trust and my son, Thomas L. Shepherd, three-fifths (⅗) of such income, reasonably adjusted to any principal distributions which the Trustee may have made to either of them pursuant to the provisions in this will contained.

Upon and after the death of Thomas L. Shepherd or Annie Moore Shepherd the net income thereafter arising from that part of the trust estate not distributable upon the death of that one of them so dying shall be paid to the survivor, quarterly or more often, so long as he or she shall live and any part of the trust estate shall continue in the hands of the Trustee as hereinafter provided.

3. When the said Annie Moore Shepherd, my granddaughter, shall have attained the age of twenty-five years, the Trustee shall pay over and deliver to her the entire principal of the "Annie Moore Shepherd Fund," which it shall have set aside and designated as such, but in the event the said Annie Moore Shepherd shall die prior to attaining the age of twenty-five years, then upon her death the Trustee shall pay over and deliver the entire principal of the said "Annie Moore Shepherd Fund," as then constituted, to her child or children then living, *per stirpes,* but if there be no such child or children then living the principal of such "Annie Moore Shepherd Fund" shall pass to my next of kin, provided that the distribution of the "Annie Moore Shepherd Fund" to Annie Moore Shepherd under the provisions of this paragraph shall not operate to prevent the said Trustee from thereafter paying a part or all of the net income from the said "Thomas L. Shepherd Fund" to Annie Moore Shepherd, as provided in paragraph two (2) of this will.

4. Upon the death of my son, Thomas L. Shepherd, the Trustee shall pay and deliver over the entire principal of the "Thomas L. Shepherd Fund," as then constituted, which it shall have set apart and designated as such, to my next of kin; except that the trusts as to the "Thomas L. Shepherd Fund" may sooner terminate in whole or in part under sub-division "5" of this article.

5. Anything hereinbefore to the contrary notwithstanding, I hereby empower my Trustee, if, in its sole, absolute and unfettered discretion it shall consider such procedure to be for the best interests of my son, Thomas L. Shepherd, to pay and deliver over to my said son, Thomas L. Shepherd, from the principal of the "Thomas L. Shepherd Fund," such sum or sums and/or such asset or assets as it may from time to time deem proper; provided, however, that no distribution shall be made pursuant to this article until five (5) years shall have elapsed after the date of my death; and provided always, that the power given the Trustee in this article to pay and deliver over to my said son, Thomas L. Shepherd, from the principal of the "Thomas L. Shepherd Fund," such sum or sums and/or such asset or assets as it may from time to time deem proper shall immediately and forever cease upon the filing of a suit or action in any court by Thomas L. Shepherd or anyone claiming by, through, or under him against the Trustee disputing this article or the result of the exercise by the Trustee of its discretion hereunder.

The inventory of testator's estate, filed July 1, 1939, valued testator's personalty at $99,120.58; his realty at $79,753.35, a total of $178,-873.93.

On June 26, 1941, testator's son, Thomas L. Shepherd, Jr., instituted an action, Docket No. 8097, by and through his guardian, in the Superior Court of Durham County against Durham Bank and Trust Company for the purpose of securing an adjudication that Annie Moore Shepherd was not a blood relative of testator, thereby to deprive her of any share of the estate.

The pleadings in Case No. 8097 disclosed the following: Testator's son had married Effie M. Rogers on June 23, 1921. The couple were unable to have a child and greatly desired one. In September 1925, when she was 2-3 weeks old, they secured from a child-placing agency the infant who is now Annie Moore Shepherd Dennis. Mrs. Effie Shepherd received the child at the home of her mother in Lynchburg, Virginia, where she had been for some time and where she remained for several months thereafter. She and testator's son then brought the child to the home of his parents in Durham, where they lived for most of their married life. They held out the infant, Annie Moore Shepherd, "as a child born of their marriage," and, although never legally adopted, "she was kept and reared as one born in the family." Testator was "led to believe that the said Annie Moore Shepherd was his grandchild." He became deeply attached to her, and the bond of affection between them was strengthened as she grew older. On April 1, 1928, testator's son and his wife separated. Answering the complaint in Case No. 8097 as guardian of Annie Moore Shepherd, Effie Shepherd (Draper) averred that her separation from Thomas L. Shepherd was caused by his inebriacy and infidelity. In April 1930 Mrs. Shepherd secured in the Superior Court of Durham County a divorce from testator's son. The decree awarded her custody of Annie Moore Shepherd, then approximately 5 years old. Thereafter the child lived with Mrs. Effie Shepherd in Lynchburg, Virginia, and was supported by her. From time to time, however, the child made extended visits in the home of Mr. and Mrs. W. T. Shepherd, where Thomas L. Shepherd continued to make his home the greater part of the time.

On November 23, 1935, Effie Shepherd married H. H. Draper, and, at the request of testator and his wife, Annie Moore Shepherd returned to Durham to live with them permanently. The most cordial relations continued to exist between Mrs. Draper and Mr. and Mrs. W. T. Shepherd. After the death of Mrs. W. T. Shepherd on February 23, 1936, the child continued, except for those periods when he sent her to boarding school, to live with testator until his death. The evidence

tends to show that she referred to him as her grandfather; that he referred to her as his granddaughter and "a wonderful grandchild."

Between the time of his mother's death in 1936 and his father's in 1939, Thomas L. Shepherd was sent to four different institutions, including the State Hospital in Raleigh, for treatment as an inebriate.

Thomas L. Shepherd averred in his complaint in Case No. 8097 that testator had named Annie Moore Shepherd as a legatee in his will because he thought she was his grandchild. His prayer for relief was that his foster daughter be declared no blood relation of testator's and that the trustee be restrained from paying out any income until "the rights of all and any persons referred to as legatees, either directly or indirectly in the said will of W. T. Shepherd, deceased, may be determined by the jury and the court."

The trustee, answering the complaint in Case No. 8097, averred that misapprehension had not caused testator to make Annie Moore Shepherd a beneficiary in his will; that, on the contrary, he had been motivated by "strong and impelling attachments of love and affection" for her as a companion and as an individual. Of the same import were the answers filed by both the guardian *ad litem* and the guardian of Annie Moore Shepherd. Effie Shepherd Draper alleged that she herself had no knowledge that testator had made a will until the institution of the suit; that it was with reluctance and heavy heart that "Tom Shepherd" had now forced her to disclose that Annie Moore Shepherd was not their child and had never been legally adopted; that they had secured the child only because she was barren and not because they wanted to perpetrate a fraud on testator or on any other person. At the hearing before Judge Mallard in the instant case, Annie Moore Shepherd Dennis testified that until 1941, when Case No. 8097 was instituted, she believed Thomas and Effie Shepherd to be her parents.

At the March 1942 Term of the Superior Court of Durham County, Honorable R. Hunt Parker, judge presiding, issues were submitted to a jury and answered as follows:

1. Is Annie Moore Shepherd a child born of and to the marriage of Thomas L. Shepherd and his wife, Effie M. Rogers Shepherd?

Answer: No.

2. Was W. T. Shepherd induced by misrepresentation or fraud practiced upon him by Thomas L. Shepherd, Effie M. Rogers Shepherd, Annie Moore Shepherd or by any other person to name Annie Moore Shepherd as a beneficiary under his will?

Answer: No.

3.  Did W. T. Shepherd name Annie Moore Shepherd a beneficiary under his will through misapprehension or mistake of fact on his part coupled with misrepresentation or fraud practiced upon W. T. Shepherd by Thomas L. Shepherd, Effie M. Rogers Shepherd, Annie Moore Shepherd, or by any other person?

Answer:  No.

4.  Was the supposed relationship of Annie Moore Shepherd to W. T. Shepherd as his supposed granddaughter the sole motive for his making her a beneficiary in his will?

Answer:  No.

5.  Did W. T. Shepherd make Annie Moore Shepherd a beneficiary in his will by reason of his love and affection for the said Annie Moore Shepherd?

Answer:  Yes.

Upon these issues the court adjudged and decreed:

1.  That the said Annie Moore Shepherd is not a child born of and to the marriage of the said Thomas L. Shepherd and his wife, the said Effie M. Rogers Shepherd, and that she is not the granddaughter of W. T. Shepherd, deceased.

2.  That the said W. T. Shepherd was not induced by misapprehension or fraud practiced upon him to name the said Annie Moore Shepherd as a beneficiary under his said last Will and Testament.

3.  That the said Annie Moore Shepherd was not named a beneficiary by the said W. T. Shepherd under his will through misapprehension or mistake of fact induced by misrepresentation or fraud practiced upon the said W. T. Shepherd, deceased.

4.  That the supposed relationship of the said Annie Moore Shepherd to the said W. T. Shepherd, deceased, was not the sole motive for the said W. T. Shepherd to name the said Annie Moore Shepherd as a beneficiary under his said Last Will and Testament.

5.  That the said W. T. Shepherd made the said Annie Moore Shepherd his beneficiary under his said Last Will and Testament by reason of his love and affection for the said Annie Moore Shepherd.

6.  That the said Annie Moore Shepherd be and she is hereby declared to be a beneficiary under the said Last Will and Testament of the said W. T. Shepherd, deceased, to the full extent as set forth by the terms and provisions of the said Last Will and Testament of the said W. T. Shepherd, deceased.

7. That the plaintiff's prayer that Durham Bank and Trust Company, Trustee, be restrained from paying out any income derived from the estate held in trust under the will of W. T. Shepherd, deceased, be and the same is hereby denied, to the end that the Durham Bank and Trust Company may continue in its administration of the Estate of W. T. Shepherd, deceased, under the terms and provisions of the said Last Will and Testament of W. T. Shepherd, deceased, and as by law provided.

8. That the costs of this action be taxed against the corpus of the three-fifths (⅗) of the estate of the said W. T. Shepherd, deceased, referred to as the "Thomas L. Shepherd Fund."

All the parties to this present proceeding or the persons under and through whom they claim were made parties to Case No. 8097 and are bound by the 1942 judgment.

In January 1944 Annie Moore Shepherd married Mr. Dennis. On September 16, 1950, when she reached the age of 25, petitioner distributed to her the corpus of her trust fund, which then amounted to approximately $80,000. Since that date she has received nothing further from testator's estate.

On July 14, 1963, T. L. Shepherd died testate, leaving no widow or issue. He devised and bequeathed all his property to respondent Arthur E. Lucas, whom he also named as his executor. At his death the corpus of the Thomas L. Shepherd fund consisted entirely of personalty and had a total market value of $402,127.36. Accrued but undistributed income amounted to $4,196.73.

When W. T. Shepherd died on March 30, 1939, he left surviving him, in addition to his son, the collateral relations listed below. For convenience they are shown in five family groups, all members dead or living included, and each group headed by testator's brother or sister from whom the members are descended. Those whose names are italicized were living at the time of the death of Thomas L. Shepherd on July 14, 1963. The dates of death for all decedents are shown.

I.  Meroe O'Kelly, sister, died February 26, 1900, survived by 3 children:

   A.  *Elizabeth O'K. Bass.*

   B.  *Gaynelle O'K. Bunting.*

   C.  Ida O'K. McMahon, who died November 14, 1955, leaving 1 daughter:

      1.  Rosa Lee McM. Duckworth, died July 6, 1962. She was survived by her husband, *Paul E. Duckworth,* and 2 children:

   a.  *Marion E. Duckworth.*

   b.  *Cathy Y. Duckworth.*

II.  Phedelia S. O'Kelly, sister, died February 26, 1941, leaving 2 children:

   A.  George F. O'Kelly, son, died August 17, 1939, survived by 3 children:

      1.  *Imogene O'K. Smith.*

      2.  *Virginia O'K. Nichols.*

      3.  *Martha O'K. Brockett.*

   B.  Emma O'K. Martin, daughter, died June 15, 1942, survived by 3 children:

      1.  *Carma M. Earley.*

      2.  *Leslie E. Martin, Jr.*

      3.  Frank C. Martin, died April 2, 1963, survived by 1 child: *Joy Martin.*

III.  Lula S. Campbell, sister, died September 19, 1960. She had 4 children:

   A.  Grace G. Lindsey, died June 12, 1920, leaving 2 children:

      1.  *Doris M. Lindsey.*

      2.  *Thomas G. Lindsey.*

   B.  John Campbell, Jr., died January 23, 1954, leaving 1 child: *Nancy C. Kennedy.*

   C.  *Thelma C. Hall.*

   D.  *Theodore Campbell.*

IV.  Ida S. Beavers, sister, died March 24, 1941. She had 5 children:

   A.  *Sallie Beavers.*

   B.  *Ella Mae B. Belvin*

   C.  *Elsie B. Weeks,* died testate June 4, 1964, survived by her husband, *H. Raymond Weeks, Jr.,* her executor.

   D.  Pearl B. Riley, died April 2, 1959, survived by her husband, *S. O. Riley;* no children.

   E.  John T. Beavers, died March 16, 1935, survived by his wife, *Mrs. John Beavers;* no children.

V.  John H. Shepherd, Sr., brother, who died May 18, 1936, survived by 3 children:

   A.  *Naomi S. Tillett.*

  B.  Thomas E. Shepherd, died April 28, 1948, survived by his
      wife, now *Mrs. Catherine Rigsbee;* no children.
  C.  *John H. Shepherd, Jr.,* died testate March 19, 1964, survived
      by his wife, *Cornelia S. Shepherd,* his executrix and sole
      legatee.

Annie Moore Shepherd Dennis contends that, because she was named
in the will as testator's granddaughter, its proper interpretation re-
quires that she receive the entire corpus and accrued income of the
Thomas L. Shepherd Trust. Arthur E. Lucas contends that, as the sole
legatee of Thomas L. Shepherd, he is entitled to the trust income which
had accrued prior to the death of Thomas L. Shepherd.

Testator's nieces and nephews and the issue of deceased nieces and
nephews all controvert Annie Moore Shepherd Dennis' claim to the
corpus of the Thomas L. Shepherd Fund. The nieces and nephews
contend that "my next of kin" as used in the will means testator's
nearest of kin who were living on July 14, 1963, the date of the death
of Thomas L. Shepherd, and that they are entitled to take the entire
fund to the exclusion of the issue of their deceased brothers and sisters.
The nieces and nephews contend further that the trust income which
had accrued prior to Thomas L. Shepherd's death should be added
to the principal and distributed to them. The grandnieces and grand-
nephews and the great-grandnieces and the great-grandnephew con-
tend that "my next of kin" means all those persons living on July
14, 1963, who are the issue of testator's brothers and sisters.

When these conflicting claims arose, petitioner-trustee brought this
action, requesting the court to advise it (1) whether the 1942 judg-
ment in Case No. 8097 excluded Annie Moore Shepherd Dennis from
being considered testator's next of kin; (2) who, under the will, are
"my next of kin" entitled to receive the distribution of the Thomas L.
Shepherd Trust Fund; and (3) who is entitled to the undistributed
trust income which had accrued prior to Thomas L. Shepherd's death.

After hearing this matter, on April 6, 1964, Judge Mallard found
facts in accordance with those detailed above. Pursuant to his findings
he concluded, *inter alia:*

> That W. T. Shepherd did not intend for either Thomas L. Shep-
> herd or Annie Moore Shepherd (Dennis) to be included in the
> term "my next of kin" as he used it in his Last Will and Testa-
> ment, and the term "my next of kin" does not include either of
> them.
>
> That in said will, W. T. Shepherd intended to use and did use
> the term "my next of kin" to describe that person, or those persons,
> who would take under the laws of descent and distribution as his

heirs at law as of the time of death of Thomas L. Shepherd, and those persons should take the corpus of the "Thomas L. Shepherd Fund," plus the net income thereon accrued since the death of Thomas L. Shepherd to the date of the distribution thereof, *per stirpes* and not *per capita,* and such was the intention of the testator, W. T. Shepherd, deceased.

That the corpus of the "Thomas L. Shepherd Fund" should be paid over and distributed to those persons who would take under the laws of descent and distribution, *per stirpes* and not *per capita,* as heirs at law of W. T. Shepherd as of July 14, 1963.

That the undistributed net income which accrued prior to the death of Thomas L. Shepherd should be paid to Annie Moore Shepherd Dennis.

He ordered distribution as follows:

A.   That the said Trustee shall pay to Annie Moore Shepherd Dennis the sum of Four Thousand, One Hundred Ninety-Six Dollars and Seventy-three Cents ($4,196.73), representing the (undistributed) net accrued income on the fund to the date of the death of Thomas L. Shepherd on July 14, 1963.

B.   That the said Trustee shall make the following distribution of the Thomas L. Shepherd Fund plus any net income or interest which has accrued thereon since the 14th day of July 1963:

1. Elizabeth O'K. Bass, one fifteenth (1/15).
2. Gaynelle O'K. Bunting, one fifteenth (1/15).
3. Marion E. Duckworth, son of Mrs. Rosa Lee McM. Duckworth, one thirtieth (1/30).
4. Cathy Y. Duckworth, daughter of Rosa Lee McM. Duckworth, one thirtieth (1/30).
5. Imogene O'K. Smith, one-thirtieth (1/30).
6. Virginia O'K. Nichols, one-thirtieth (1/30).
7. Martha O'K. Brockett, one-thirtieth (1/30).
8. Carma M. Earley, one thirtieth (1/30).
9. Leslie E. Martin, Jr., one-thirtieth (1/30).
10. Joy Martin, daughter of Frank C. Martin, one-thirtieth (1/30).
11. Doris Lindsey, one-fortieth (1/40).
12. Thomas Lindsey, one-fortieth (1/40).
13. Nancy C. Kennedy, one-twentieth (1/20).
14. Thelma C. Hall, one-twentieth (1/20).

15. Theodore Campbell, one-twentieth (1/20).
16. Sallie Beavers, one-fifteenth (1/15).
17. Ella Mae B. Belvin, one-fifteenth (1/15).
18. Elsie B. Weeks, one-fifteenth (1/15).
19. Naomi S. Tillett, one-tenth (1/10).
20. Cornelia S. Shepherd, Executrix under the Last Will and Testament of John H. Shepherd, Jr., deceased, one-tenth (1/10).

C. The court costs of this action, including any orders which the Court might make as to compensation, shall be paid by the Trustee.

From this judgment Annie Moore Shepherd Dennis, Arthur E. Lucas, and the 9 nieces and nephews of testator living on July 14, 1963, upon exceptions duly taken, appeal. Each assigns as error the findings of fact and conclusions of law adverse to his financial interest.

*Clark & Clark for Nancy Campbell Kennedy, respondent appellee.*

*Bryant, Lipton, Bryant & Battle for Imogene O'Kelly Smith, Virginia O'Kelly Nichols, Martha O'Kelly Brockett, Leslie E. Martin, Jr., Thomas Lindsey, Doris Moore Lindsey, and Carma Martin Earley, respondents appellees.*

*W. J. Brogden, Jr., respondent, appellee, guardian ad litem for Marion Eugene Duckworth and Cathy Yvonne Duckworth, minors.*

*Thomas H. Lee, respondent, appellee, guardian ad litem for Joy Martin, minor.*

*Hofler, Mount & White for Elizabeth O'Kelly Bass, Gaynelle O'-Kelly Bunting, Naomi S. Tillett and Cornelia S. Shepherd, Executrix of the Estate of John H. Shepherd, Jr., respondents appellants.*

*Haywood, Denny & Miller for Sallie Beavers, Ella Mae Beavers Belvin, Theodore Campbell, Thelma C. Hall, and H. Raymond Weeks, Jr., Executor of the Estate of Elsie Beavers Weeks, respondents appellants.*

*Nye, Winders & Mitchell for Annie Moore Shepherd Dennis, respondent appellant.*

*Nick Galifianakis and Roger S. Upchurch for Arthur Earl Lucas, Individually and as Executor of the Estate of Thomas L. Shepherd, respondent appellant.*

SHARP, J. The disposition of the remainder of the Thomas L. Shepherd Fund after the death of the life beneficiary depends upon the answer to three questions: (1) When testator directed the trustee to

distribute the remainder as then constituted "to my next of kin," did he mean his nearest of kin or those who would take from him under the statute of distributions? (2) Did testator intend to include Annie Moore Shepherd Dennis, whom he described in his will as "my grand-daughter," in the class he designated as "my next of kin"? (3) Are "my next of kin" to be ascertained at the death of testator or at the death of Thomas L. Shepherd, the life beneficiary?

*First.* The answer to the first question must be found in a canon of construction. It is the rule in this jurisdiction, as well as in England and a substantial number of the other American jurisdictions, that the words *next of kin* "mean 'nearest of kin' and that in the construction of deeds and wills, unless there are terms in the instrument showing a contrary intent, the words 'next of kin,' without more, do not recognize or permit the principle of representation." *Wallace v. Wallace,* 181 N.C. 158, 163, 106 S.E. 501, 504, *accord: Williams v. Johnson,* 228 N.C. 732, 47 S.E. 2d 24; *Williamson v. Cox,* 218 N.C. 177, 10 S.E. 2d 662; *Knox v. Knox,* 208 N.C. 141, 179 S.E. 610; *Redmond v. Burroughs,* 63 N.C. 242, 245; *Jones v. Oliver,* 38 N.C. 369; Annot., Term "next of kin" used in will, as referring to those who would take in cases of intestacy under distribution statutes, or to nearest blood relatives of designated person or persons, 32 A.L.R. 2d 296, 303; 57 Am. Jur., Wills § 1375 (1948). This rule of construction, like many another of our rules, both of construction and of property, "is grown reverend by age, and is not now to be broken in upon." Kenyon, M. R., in *Jee v. Audley,* 1 Cox 324, 325, 29 Eng. Rep. 1186, 1187 (Ch. 1787).

We perceive nothing in the will of W. T. Shepherd which suggests that he used the words *my next of kin* in any but the usual acceptation of that phrase. We hold, therefore, that they mean his nearest of kin and not his heirs or distributees generally.

*Second.* The second question, whether testator intended to include Annie Moore Shepherd (Dennis) in the class of his next of kin, is not answered by the 1942 judgment in Case No. 8097. That judgment established that she was not a relative of testator but that he had given her 2/5 of his residuary estate as a beloved individual and not merely as his supposed granddaughter. See *Howell v. Troutman,* 53 N.C. 304; Annot., Fraud or mistake as to relationship or status of legatee or devisee as affecting will, 17 A.L.R. 247. Thus, once again, we face the ever-recurring problem of determining a testator's intent from a consideration of the will itself and the circumstances confronting him. To ascertain such intent, "we must consider the instrument as a whole and give effect to such intent unless it is contrary to some rule of law or at variance with public policy." *Trust Co. v. Taliaferro,* 246 N.C. 121, 127, 97 S.E. 2d 776, 780.

It has been held that certain named persons described by a testator in his will as "my cousins" took under the residuary clause directing distribution among "my relatives hereinbefore named," even though those persons were not legally his cousins. *Seale-Hayne v. Jodrell,* [1891] A. C. 304, *affirming In re Jodrell,* 44 Ch. D. 590 (1890). With reference to a somewhat similar situation in *In re Wood,* [1902] 2 Ch. 542, 546, Vaughan Williams, L. J., said "(T)his is one of those cases in which the testator has created a dictionary for himself, and . . . we must read his will in the light of that dictionary." See 2 Jarman, Wills 1611 (1910 Ed.) ; 1 Wiggins, North Carolina Wills and Administration of Estates § 134 (1st Ed. 1964).

It seems that those who framed the issues in Case No. 8097 assumed that W. T. Shepherd died in the belief that Annie Moore Shepherd was his grandchild. And here it is argued, on the one hand, that his frequent reference to her in the will as "my granddaughter" is proof positive that testator died in the belief that Annie Moore Shepherd was his grandchild. On the other, it is contended that his will discloses to the discerning that he knew she was not his grandchild and that it reveals a skillful and subtle attempt to protect her status, to provide for her to the extent of 2/5 of his estate, and to insure that the balance after his son's death should go only to his blood kin. He could, of course, have accomplished this purpose in a more direct manner by saying, "to my next of kin, excluding my granddaughter, Annie Moore Shepherd, and her issue, for whom I have heretofore made adequate provision." Be that as it may, the question remains, did he intend to include her when he used the phrase "my next of kin"? Judge Mallard held that testator intended to include in that classification neither her nor his only son. With this construction we agree.

At the time of testator's death, and for more than ten years before, his son had been addicted to drink. Testator, not considering his son competent to manage his business affairs, created the Thomas L. Shepherd Trust. Although he empowered the trustee "in its sole, absolute, and unfettered discretion" to pay to his son such portions of the principal as it might "from time to time deem proper," testator positively prohibited any such payment from the principal sooner than 5 years after his death. The wisdom of this precaution appears from information disclosed by the pleadings in Case No. 8097. In the 3-year period between the death of his mother and that of his father, Thomas L. Shepherd was in four different institutions for treatment for alcoholism. At the time suit No. 8097 was instituted, he had been committed by court order to an institution. Testator specifically stated that it was not his intent that the trustee allot him amounts which it believed, or might "by experience find, likely to discourage a sober, upright and

useful life." That he did not trust his son to abide by his testamentary wishes is shown by the provision of the will which would forever revoke the power of the trustee to pay him any part of the corpus of his trust fund if the son or any one claiming through him should file a suit "disputing" Article Fifth of the will or "the result of the exercise of the trustee of its discretion" thereunder.

At the time testator made his will in 1937, Annie Moore Shepherd was approximately 12 years old. The corpus of her trust fund, which would be hers absolutely if she lived to age 25, was 2/5 of his entire estate, which, according to the inventory filed July 1, 1939, would then have been in excess of $70,000.00. If she died before, leaving no child or children, testator's direction was that the principal of the "Annie Moore Shepherd Fund shall pass to my next of kin." In such event, had Thomas L. Shepherd still been alive, he would have been not only testator's nearest of kin but the only representative of that class and thus, nothing else appearing, entitled to the entire corpus of the Annie Moore Shepherd Fund. Testator having made his son's access to any of the principal of his own trust fund dependent upon the trustee's discretion and having stated his desire that his son have no funds which would discourage a sober life, we entertain no notion that he intended ever to create the possibility that his son acquire such a sum of money in his own right to dissipate, all at one time, as he saw fit. Had testator intended his son to have the income from the corpus of the Annie Moore Shepherd Fund in the event she died before age 25, he would, we think, have added it to the son's own trust fund. Had he intended to give it to him outright, he would undoubtedly have said, "in such event, the principal of this fund shall pass to my son if he then be living." To give an individual the residuum of a trust by referring to him as "my next of kin" instead of by name would indeed be clumsy draftsmanship.

If, when he gave the remainder of the Annie Moore Shepherd Fund to his next of kin in the event of her death before age 25 without children, testator meant to exclude his son, and if, as he did with reference to the remainder of the Thomas L. Shepherd Fund, testator subsequently used the same phrase, may we not assume that he used it with similar meaning, *i. e.*, to exclude his supposed granddaughter? As Denny, J. (now C. J.), said in *Trust Co. v. Green,* 239 N.C. 612, 619, 80 S.E. 2d 771, 776:

> "It is a well settled rule of testamentary construction that 'if it is apparent that in one use of a word or phrase a particular significance is attached thereto by the testator, the same meaning will be presumed to be intended in all other instances of the use by him of the same word or phrase.' *Carroll v. Herring,* 180 N.C.

369, 104 S.E. 892; *Taylor v. Taylor,* 174 N.C. 537, 94 S.E. 7; *Grandy v. Sawyer,* 62 N.C. 8; *Lockhart v. Lockhart,* 56 N.C. 205; *Gibson v. Gibson,* 49 N.C. 425; 57 Am. Jur., Wills, section 1152, page 750, and cited cases; 69 C.J., Wills, section 1131(2), page 77."

We find nothing in this will to indicate that testator used the words *my next of kin* with two different meanings in disposing of the remainders after life estates in the two funds. If the testator did not intend to include his son in the classification "my next of kin," then *a fortiori* he did not intend to include his supposed granddaughter. Annie Moore Shepherd, or her issue, were to have one fund; Thomas L. Shepherd was to have the benefit of the other; and, at his death, testator's next of kin — excluding the only two beneficiaries identified by name — were to have what remained of it. Here, as in *In re Carter's Will,* 99 Vt. 480, 134 Atl. 581, 61 A.L.R. 1005, where the testator devised property to trustees for the benefit of his wife, and his son, with remainder to the testator's heirs at law, "it will be seen that by the creation of said trust fund the testator intended to provide for three classes of beneficiaries," the two life beneficiaries of the trust and, third, his heirs at law. *Id.* at 487, 134 Atl. at 584, 61 A.L.R. at 1010. In this case the third beneficiary is testator's next of kin.

We agree with the court below that testator, under the circumstances here disclosed, did not, in his use of the words "my next of kin," intend to include Annie Moore Shepherd. It follows, therefore, that she is not entitled to share in the corpus of the Thomas L. Shepherd Fund. Under the express provisions of Item 2 of the Fifth Provision of the will, however, she is entitled to the income from it which accrued, but was undistributed, prior to the death of Thomas L. Shepherd, and Judge Mallard so held. The trustee had the absolute discretion, during the joint lives of the trust beneficiaries, to divide the income between them as it saw fit. It had no authority, however, to pay any of it to any other person. Even after Annie Moore Shepherd became 25 and received the corpus of her fund, under Item 3 of Provision Fifth, the trustee had the authority to pay "a part or all of the net income from the 'Thomas L. Shepherd Fund' to Annie Moore Shepherd as provided in paragraph (2) of this will." The fact that she had received nothing from the trust since she became 25 years old is immaterial. That income which accrued, but was undistributed, before the death of Thomas L. Shepherd did so during the joint lives of Thomas L. Shepherd and Annie Moore Shepherd Dennis. It not having been paid to Thomas L. Shepherd during his lifetime, only Annie Moore Shepherd Dennis is entitled to it.

*Third.* When did the remainder in the Thomas L. Shepherd Fund vest?

" 'As a general rule, the death of the testator is the time at which the members of a class are to be ascertained in case of a gift to the testator's heirs, next of kin, or other relatives, unless the context of the will indicates a clear intention that the property shall go to the heirs, next of kin, or other relatives at a different time, such as at the time of distribution, or at the death of the first taker, or at the date of the execution of the will. . . . Where the gift is to the heirs or next of kin of another than the testator, it ordinarily refers to the death of such other, unless the context of the will manifests that the class shall be determined at a different time, such as the time of distribution.' " *Witty v. Witty,* 184 N.C. 375, 379, 114 S.E. 482, 484.

The rule is succinctly stated in *Yarn Co. v. Dewstoe,* 192 N.C. 121, 124 133 S.E. 407, 409:

"As a general rule where a devise is made to one for life and after his death to the testator's next of kin, the next of kin who are to take are the persons who answer that description at the death of the testator and not those who answer the description at the death of the first taker. (Citations omitted.) It is otherwise, however, where it appears from the terms of the will that some intervening time is indicated." Accord, *Pridgen v. Tyson,* 234 N.C. 199, 66 S.E. 2d 682; *Privott v. Graham,* 214 N.C. 199, 198 S.E. 635; *Trust Co. v. Lindsay,* 210 N.C. 652, 188 S.E. 94; *Baugham v. Trust Co.,* 181 N.C. 406, 107 S.E. 431; *Jenkins v. Lambeth,* 172 N.C. 466, 90 S.E. 513; *Rives v. Frizzle,* 43 N.C. 237; *Jones v. Oliver, supra.*

According to Annot., Time as of which members of class described as testator's "heirs," "next of kin," "relation," etc., to whom a future gift is made, are to be ascertained, 49 A.L.R. 174, 177, this is a rule "so universally recognized as to render superfluous a full citation of the cases which support it, that, in the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in the light of the surrounding circumstances, the class described as testator's heirs, or next of kin, or relations, or such persons as would take his estate by the rules of law if he had died intestate, to whom a remainder or executory interest is given by the will, is to be ascertained at the death of the testator. One of the reasons adduced in support of this rule of construction is that it gives the words of description their natural and *prima facie* meaning. A reason more frequently brought forward is the preference of the law for a construction which will vest an estate at the earliest opportunity." Supplementing annotations are found in 127 A.L.R. 602; 169 A.L.R. 207. *Accord,*

57 Am. Jur., Wills § 1279 (1948). This is not, however, "a rule of substantive law which the courts are imperatively required to follow, but is a rule of interpretation adopted as tending to ascertain correctly the intent of the testator, and may be departed from where a different meaning is disclosed from a proper perusal of the entire instrument." *Jenkins v. Lambeth, supra* at 469, 90 S.E. at 514.

If the remainder here be held to have vested at the death of testator, only the issue of Phedelia S. O'Kelly, Lula S. Campbell, and Ida S. Beavers, the three sisters of testator who were living at his death, will take. If it be held to vest at the death of the life beneficiary, testator's nieces and nephews living on that day will answer the roll call as his nearest of kin.

The nieces and nephews who are children of Meroe S. O'Kelly and John H. Shepherd, Sr. contend that the will of W. T. Shepherd, read in the light of the circumstances attendant upon its execution, manifests an intent contrary to the general rule and that testator's next of kin should be determined as of the death of the life beneficiaries for that (1) the trustee had the power, during the life of Thomas L. Shepherd, either to invade the principal or to turn it all over to him free of the trust; and (2) the trustee was directed, at the death of Thomas L. Shepherd, to pay and deliver over the corpus as then constituted to testator's next of kin.

(1) "(A) remainder is not made contingent by uncertainty as to the amount of the estate remaining undisposed of at the expiration of the life estate *but by uncertainty as to the persons who are to take.*" (Italics ours.) 33 Am. Jur., Life Estates, Remainders, and Reversions § 87 (1941).

> "(T)he fact that a remainder is vested does not imply any certainty as to the quantity and value of the remainderman's interest, since a remainder may be vested, although the amount of the estate remaining undisposed of at the expiration of the particular estate is uncertain, as where the first taker is given a power of appointment or disposition, with remainder limited over in default of the exercise of such power." 31 C.J.S., Estates § 69 (1964).

In *Woodman v. Woodman,* 89 Me. 128, 35 Atl. 1037, the testatrix conveyed her estate to trustees during the lives of her husband and daughters and that of the survivor, with power of sale should their support require it. She devised the remainder, upon the termination of the trust, to named beneficiaries. In holding that these persons took a vested remainder, the court said: "We think that, according to principle and the weight of authority, a remainder is not made contingent by an uncertainty as to the amount of the property that may remain un-

disposed of at the expiration of the particular estate, the life tenant having the power of disposal." *Id.* at 136, 35 Atl. at 1040. *Accord, Johnson v. Superior Court,* 68 Ariz. 68, 199 P. at 2d 827; *Gilmore v. Gilmore,* 197 Ga. 303, 29 S.E. 2d 74; *President & Fellows of Harvard College v. Balch,* 171 Ill. 275, 49 N.E. 543; *Ducker v. Burnham,* 146 Ill. 9, 34 N.E. 558, 37 Am. St. Rep. 135; *Railsback v. Lovejoy,* 116 Ill. 442, 6 N.E. 504; *Pointer v. Lucas,* 131 Ind. App. 10, 169 N.E. 2d 196; *Heilman v. Heilman,* 129 Ind. 59, 28 N.E. 310; *Ghormley v. Kleeden,* 155 Kan. 319, 124 P. 2d 467; *Abbot v. Danforth,* 135 Me. 172, 192 Atl. 544; *Roberts v. Roberts,* 102 Md. 131, 62 Atl. 161, 1 L.R.A. (N.S.) 782; *Robertson v. Robertson,* 313 Mass. 520, 48 N.E. 2d 29; *Ashbaugh v. Wright,* 152 Minn. 57, 188 N.W. 157; *Uphaus v. Uphaus,* Mo., 315 S.W. 2d 801; *Cruikshank v. Cruikshank,* 39 Misc. Rep. 401, 80 N.Y.S. 8; *Mitchell v. Knapp,* 54 Hun. 502, 8 N.Y.S. 40, *aff'd* 124 N.Y. 654, 27 N.E. 413; *Medlin v. Medlin,* Tex. Civ. App., 203 S.W. 2d 635; *Reilly v. Huff,* Tex. Civ. App., 335 S.W. 2d 275; *In re Ivy's Estate,* 4 Wash. 2d 1, 101 P. 2d 1074; *In re Downs' Estate,* 243 Wis. 303, 9 N.W. 2d 822. "The corpus of the estate might be diminished, but the right to the balance remained unaffected." *Abbott v. Danforth, supra* at 176, 192 Atl. at 546. The life tenant's power of sale "could only be considered as a circumstance bearing upon the intent of the testator; for it is not the uncertainty as to the quantum or condition of the estate, but uncertainty as to the persons to take, that would render the estate contingent." *Heilman v. Heilman, supra* at 65, 28 N.E. at 312. In *President & Fellows of Harvard College v. Balch, supra,* where the particular estate was given in trust for a life beneficiary, it was held that a power to invade the corpus during the existence of the life estate had nothing to do with the vesting of the remainder, but that the estate vested subject to the power. *"If the power is so exercised as to dispose of all the estate, nothing may be left to go to the remainderman.* But the remainder is not made contingent because it is uncertain whether the power will be exercised." *Id.* at 282, 49 N.E. at 545. (Italics ours.) "The uncertainty as to the amount does not prevent the vesting of the right. * * * The intervening trust will not prevent this result." *Mitchell v. Knapp, supra* at 505, 8 N.Y.S. at 42. *Accord, Gilmore v. Gilmore, supra; President & Fellows of Harvard College v. Balch, supra; Roberts v. Roberts, supra; Cruikshank v. Cruikshank, supra; In re Ivey's Estate, supra.*

The rule stated above is the rule in North Carolina. In *Jackson v. Langley,* 234 N.C. 243, 246, 66 S.E. 2d 899, 901, this Court, speaking through Denny, J. (now C. J.), said:

"(T)he mere fact that John Alfred Langley, Sr., the trustee, was given the right to use the income from or corpus of the trust

estate for his own benefit in the event certain enumerated emergencies arose, did not in any way affect or delay the vesting of the estate in John Alfred Langley, Jr., to any greater extent than if the trustee had been given a life estate with the power to use the corpus, or any part thereof for his own use. The overwhelming weight of authority, including our own decisions, supports the view that in such cases the estate vests in the ultimate beneficiary upon the death of the testator, subject to be divested of such portion thereof as may be required to meet the authorized needs of the life tenant or other designated person."

In *Rudisill v. Hoyle,* 254 N.C. 33, 118 S.E. 2d 145, the testator devised his residuary estate, both real and personal, to his wife for life, with power to sell any part of the property which, in her sole discretion, was necessary for her support and maintenance, with limitation over to *R* and *K* of all property "remaining unused or unconsumed or converted into other property" at the time of her death. In an opinion by Moore, J., who distinguished those devises which limit the gift to a life estate and those which attempt to make a gift over after a devise in fee, the Court held that the wife took a life estate with power of disposition in fee for the purposes stated in the will and that *R* and *K* took "a vested remainder in equal shares and in fee 'in and to all . . . property . . . remaining unused or unconsumed or converted into other property at the time or her (the wife's) death.' " *Id.* at 45, 118 S.E. 2d at 154.

(2)   The canon of construction known as the "divide and pay over rule," *i.e.,* that, where the only words of gift are found in the direction to divide and pay over at a future time, futurity is annexed to the substance of the gift and it is contingent, does not apply "where the division is postponed for the convenience of the fund or property, as for the purpose of letting in a prior gift for life to another. In such a case the estate will be vested, and not contingent, and the vesting will not be deferred until the division." *President & Fellows of Harvard College v. Balch, supra* at 282, 49 N.E. at 545; *accord,* 39 Am. Jur., Life Estates, Remainders, and Reversions § 112-114 (1941). In *Witty v. Witty, supra,* the testator was survived by his wife and five children. He devised his land to his wife for life and at her death or remarriage he directed that the land be sold and "divided among my lawful heirs." At the death of the wife all five children were dead. None left children. The only one who married was the last to die, and his wife survived him. The Court held that the testator's lawful heirs were determined as of the date of his death; that they were his five children; that the title to the whole of the lands vested in the last surviving child and

passed to his wife and his adopted son as his devisees. The Court said, *per* Stacy, J. (later C. J.):

> "Again, the fact that the direction is to sell the realty at the expiration of the preceding particular estate and to divide the proceeds derived therefrom ordinarily will not affect the general rule as to when the remainder is to vest. * * * It is provided that the remainder after the life estate is to be divided equally among 'my lawful heirs' *simpliciter,* and this imports a division among those who were the heirs of the testator at his death, and who took in right at that time, though they were not to come into actual possession and enjoyment until the previous benefit, intended for their mother, should terminate by her death." *Id.* at 379, 381, 114 S.E. at 485, 486.

In *Satterfield v. Stewart,* 212 N.C. 743, 745, 194 S.E. 459, 461, it was said:

> "The provision that the land should be sold after the death of the life tenant and upon the death or marriage of the three daughters, and the proceeds divided equally among said daughters, their heirs and assigns, cannot be held to delay the vesting of the title in said daughters. *Witty v. Witty, supra.*" Accord, *Coddington v. Stone,* 217 N.C. 714, 9 S.E. 2d 420.

Where, however, apart from the words *divide and pay over* themselves, the will clearly used "words of futurity" indicating the testator's intent that only those should take who answer the roll call at the termination of the particular estate, the devise will be contingent. See *Parker v. Parker,* 252 N.C. 399, 113 S.E. 2d 899; *Carter v. Kempton,* 233 N.C. 1, 62 S.E. 2d 713; *Knox v. Knox, supra.*

Without more, neither the power of the trustee to divest the remaindermen of any share in the corpus nor testator's direction to divide and pay over the remainder to a class after the death of the life tenant will create a contingent remainder. There is, however, a third consideration, which is not discussed in the briefs. Thomas L. Shepherd, the life tenant, was testator's only son. At the time of testator's death he was, therefore, the sole member of the class, *i. e.,* "my next of kin," to which the remainder at his death was given. In this situation the courts divide as to whether the members of the class taking the remainder are to be ascertained at the death of the testator or of the life tenant.

> "Some of the cases appear to have taken the view that, where the person taking the particular estate is, at testator's death, the sole member of the class to whom the limitation over is made, it is a necessary inference that the gift over shall vest in the persons

answering the description at the termination of the particular estate. But the great weight of authority is to the effect that the fact that, at the time of the making of the will, the person to whom a particular estate is given will presumably be, at the testator's death, the sole member of the class to whom the same property is limited, is not of itself sufficient to overcome the presumption that the membership of the class is to be ascertained at testator's death." Annot., Time as of which members of class described as testator's 'heirs,' 'next of kin,' 'relations,' etc., to whom a future gift is made, are to be ascertained, 49 A.L.R. 174, 182, supplemented in 127 A.L.R. 602, 607; 169 A.L.R. 207, 210.

The question frequently arises in a contest between the devisee of a precedent estate and the next of kin of the testator. To some courts it does not seem incongruous "that a person who takes a life interest by virtue of a particular gift to him nominatim should also take a further interest, either alone or jointly with others, as the case may be, under a gift in the same will to a class. * * * On the other hand, it has been held that where the life tenant is the sole heir or next of kin at the death of the testator, the remainder will be considered as given to the person answering the description at the termination of the estate for life, and since the persons who may at that time be entitled to take the estate are uncertain, the remainder is contingent. The true rule seems to be that the fact that the life tenant is also among the members or is the sole member of the class is not determinative of the question whether the remainder is vested or contingent, but is but one circumstance to be considered in determining the nature of the remainder and the time when the members of the class are to be determined." 33 Am. Jur., Life Estates, Remainders, and Reversions § 139 (1941); see Annot., Right of devisee of precedent estate to take under limitation over to heirs or next of kin of testator, 30 A.L.R. 2d 393, 416, 424.

We have found no North Carolina case right in point, and none has been cited. In *Grantham v. Jinnette*, 177 N.C. 229, 98 S.E. 724, the testator, an illegitimate, devised all his property to his wife for life and directed that at her death it be sold and divided among his "legal heirs." In a contest between the widow's heirs and the University, her heirs claimed that the widow was both life tenant and remainderman. "The University contended that the widow could not be a life tenant and heir; that the statute makes a widow heir only when the property is not disposed of by will; that this testator did dispose of his property by will, and the widow was not therefore his heir; and that therefore, the testator, as to the remainder in fee, was without heirs. The Court held this to be correct, and that the fee escheated to the University. There was no question before the Court as to whether the re-

mainders were vested or contingent." (This interpretation of *Grantham v. Jinnette, supra,* was made by Stacy, J. (later C. J.), in *Witty v. Witty, supra* at 382, 114 S.E. at 486). In *Grantham v. Jinnette, supra* at 233, 98 S.E. at 726, we find this dictum: "The fact that at the time of the making of the will the person to whom a particular estate was given will presumably be at the testator's death, the sole member of the class to whom the same property is limited, and the use of terms importing plurality in the membership of the class and requiring a *division* among them, while not conclusive of an intent to postpone the ascertaining of the membership of the class, are other indications of such an intention properly to be taken into consideration."

Where the life tenant is the sole member of the class to which the remainder is given, the courts, in ascertaining the testator's intent, have held: (1) the will created a vested remainder subject to the life estate but excluding the life tenant, *Close v. Benham,* 97 Conn. 102, 115 Atl. 626; *Abbott v. Danforth, supra; In re Carter's Will, supra;* (2) the will created a vested remainder, the remaindermen being determined at the testator's death, with no exclusion of the life tenant, and the mere circumstance that the devisee of the precedent estate is the sole heir is not sufficient to show that the testator intended heirs or next of kin to be ascertained at any time other than his death, *Weil v. Converse,* 273 Ala. 495, 142 So. 2d 345; *Clardy v. Clardy,* 122 S.C. 451, 115 S.E. 603; (3) the will created a contingent remainder in those who answered the roll call at the death of the life tenant, *Boston Safe Deposit & Trust Co. v. Waite,* 278 Mass. 244, 179 N.E. 624; *Heard v. Read,* 169 Mass. 216, 47 N.E. 778; *Irvine v. Ross,* 339 Mo. 692, 98 S.W. 2d 763; *Oleson v. Somogyi,* 90 N.J. Eq. 342, 107 Atl. 798; *Boyd v. Fanelli,* 199 Va. 357, 99 S.E. 2d 619, and where the life tenant is the beneficiary of a spend-thrift trust, the implication is clear that the testator did not intend the life tenant to have an interest in the remainder which would then be liable for his debts, *Boston Safe Deposit & Trust Co. v. Waite, supra.* For more extensive citations see Annot., Right of devisee of precedent estate to take under limitation over to heirs or next of kin of testator, 30 A.L.R. 2d 393, 416, 424.

In this case the devisee of Thomas L. Shepherd refrains from making the futile argument that he is entitled to the corpus of the Thomas L. Shepherd Fund. As we have heretofore indicated, it seems quite clear that testator intended to exclude his son, the life tenant, from the class of his next of kin, and that the son took no interest in the remainder. Of course, the trustee, at any time prior to his death, could have exercised its power to give him the corpus, but this it never did. That possibility, therefore, does not bear upon the question confronting us. Strictly speaking, since the son, the only member of the class of testator's next

of kin, was excluded from the remainder, as long as he lived there was no one who could qualify as testator's next of kin. The son and Annie Moore Shepherd, the supposed granddaughter, both being excluded from that classification, testator's three surviving sisters were his next closest kin, but we have already decided that the phrase my *next of kin* here means "my nearest of kin." It does not mean "my next nearest of kin," an offbeat meaning. Therefore, testator's next of kin could not be ascertained until the son's death, and the remainder is contingent. Where the remainder is limited to a testator's next of kin, *i. e.,* his nearest of kin, and where the life tenant is himself the sole nearest of kin, it seems to us impossible to determine the takers of the remainder during the life tenancy, if the life tenant is himself to be excluded.

An additional consideration fortifies, we think, this conclusion. Testator's three sisters living at his death were related to him in the second degree. Had the remainder vested in them at testator's death, it would have opened to let in any children born thereafter to the life tenant, *Parker v. Parker, supra; Fleetwood v. Fleetwood,* 17 N.C. 222; but, as grandchildren are also related to a grandparent in the second degree, testator's afterborn grandchildren would have shared in his estate with his surviving sisters. Such a result would be possible only under a will giving property to the class "my next of kin" in the usual acceptation of that phrase, since, under the statute of distributions, collaterals are excluded if there are any lineals. In this case, it was much more likely that the life tenant would have children than that testator's sisters should survive the life tenant. The possibility that collaterals in the second degree would share with second-degree lineals strongly suggests that testator did not intend the remainder to vest until the death of his son. It is not likely that he should want his unnamed grandchildren, if any, to share equally with the estates of his sisters who survived him. He designated no takers by name; he simply resorted to a class designation, and all members of the class would be of the same degree of kinship to him if the roll is called at the death of the life tenant. In form and phraseology the devise under consideration here is indistinguishable from that in *Witty v. Witty, supra,* and, but for the fact that the life tenant here was the sole representative of the class, testator's next of kin, this case would in fact be indistinguishable from *Witty v. Witty, supra.* This fact, however, makes the difference between the vested remainder in *Witty* and the contingent remainder here. In *Jones v. Oliver, supra,* testator devised property to his wife for life, remainder to her children, and, if none, to be equally divided among his and his wife's next of kin. The wife died without issue, and the question arose "at what period is the next of kin to be looked for?" Daniel, J., speaking for this Court, said:

"(H)ere we see nothing, in the language of the will or in the circumstances of the parties to lead us to suppose that the testator meant to exclude any of the persons, who were next of kin of himself or of his wife at his death, in favor of persons, who might happen to answer the description at the death of his wife without having issue. *If the wife had been one of the next of kin, herself, as it is clear the testator intended she should have but a life estate, the argument would be strong that the next of kin at her death were in the testator's contemplation." Id.* at 373. (Italics ours.)

We hold that the will of W. T. Shepherd manifests an intent that his next of kin be ascertained at the death of Thomas L. Shepherd. Those who answered the roll call on that date were his nieces and nephews: Elizabeth O'K. Bass, Gaynelle O'K. Bunting, Thelma C. Hall, Theodore Campbell, Sallie Beavers, Ella Mae B. Belvin, Elsie B. Weeks, Naomi S. Tillett, and John H. Shepherd, Jr.

The case is remanded for judgment in accordance with this opinion.

Error and remanded.

PARKER, J., took no part in the consideration or decision of this case.